LEWIS *v.* UNITED STATES

No. 95–6465.   Argued April 23, 1996—Decided June 24, 1996

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, SOUTER, and THOMAS, JJ., joined. KENNEDY, J., filed an opinion concurring in the judgment, in which BREYER, J., joined, *post*, p. 330. STEVENS, J., filed a dissenting opinion, in which GINSBURG, J., joined, *post*, p. 339.

*Steven M. Statsinger* argued the cause for petitioner. With him on the briefs were *Henriette D. Hoffman* and *David A. Lewis.*

*Cornelia T. L. Pillard* argued the cause for the United States. On the brief were *Solicitor General Days, Acting Assistant Attorney General Keeney, Deputy Solicitor General Dreeben, Richard P. Bress,* and *Louis M. Fischer.*[*]

JUSTICE O'CONNOR delivered the opinion of the Court.

This case presents the question whether a defendant who is prosecuted in a single proceeding for multiple petty offenses has a constitutional right to a jury trial where the aggregate prison term authorized for the offenses exceeds six months. We are also asked to decide whether a defendant who would otherwise have a constitutional right to a jury trial may be denied that right because the presiding judge has made a pretrial commitment that the aggregate sentence imposed will not exceed six months.

We conclude that no jury trial right exists where a defendant is prosecuted for multiple petty offenses. The Sixth

---

[*]*David A. Reiser, John Vanderstar,* and *Jeffrey B. Coopersmith* filed a brief for the National Legal Aid and Defender Association et al. as *amici curiae* urging reversal.

*Christopher Warnock* filed a brief for the Jury Trial Group as *amicus curiae.*

Amendment's guarantee of the right to a jury trial does not extend to petty offenses, and its scope does not change where a defendant faces a potential aggregate prison term in excess of six months for petty offenses charged. Because we decide that no jury trial right exists where a defendant is charged with multiple petty offenses, we do not reach the second question.

I

Petitioner Ray Lewis was a mail handler for the United States Postal Service. One day, postal inspectors saw him open several pieces of mail and pocket the contents. The next day, the inspectors routed "test" mail, containing marked currency, through petitioner's station. After seeing petitioner open the mail and remove the currency, the inspectors arrested him. Petitioner was charged with two counts of obstructing the mail, in violation of 18 U. S. C. § 1701. Each count carried a maximum authorized prison sentence of six months. Petitioner requested a jury, but the Magistrate Judge granted the Government's motion for a bench trial. She explained that because she would not, under any circumstances, sentence petitioner to more than six months' imprisonment, he was not entitled to a jury trial.

Petitioner sought review of the denial of a jury trial, and the District Court affirmed. Petitioner appealed, and the Court of Appeals for the Second Circuit affirmed. 65 F. 3d 252 (1995). The court noted that the Sixth Amendment jury trial right pertains only to serious offenses, that is, those for which the legislature has authorized a maximum penalty of over six months' imprisonment. The court then addressed the question whether a defendant facing more than six months' imprisonment in the aggregate for multiple petty offenses is nevertheless entitled to a jury trial. The Court of Appeals concluded that, for determination of the right to a jury trial, the proper focus is on the legislature's determination regarding the character of the offense, as indicated by maximum penalty authorized, not on the length of

the maximum aggregate sentence faced. *Id.*, at 254–255. Because each offense charged here was petty in character, the court concluded that petitioner was not entitled to a jury trial.

The court explained in dictum that because the character of the offense as petty or serious determined the right to a jury trial, not the sentence faced, a trial judge's self-imposed limitation on sentencing could not deprive a defendant of the right to a jury trial. *Id.*, at 255–256.

We granted certiorari, 516 U. S. 1088 (1996), to resolve a conflict in the Courts of Appeals over whether a defendant prosecuted in a single proceeding for multiple petty offenses has a constitutional right to a jury trial, where the aggregate sentence authorized for the offenses exceeds six months' imprisonment, and whether such jury trial right can be eliminated by a judge's pretrial commitment that the aggregate sentence imposed will not exceed six months. See *United States* v. *Coppins,* 953 F. 2d 86 (CA4 1991); *United States* v. *Bencheck,* 926 F. 2d 1512 (CA10 1991); *Rife* v. *Godbehere,* 814 F. 2d 563 (CA9 1987).

## II

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." It is well established that the Sixth Amendment, like the common law, reserves this jury trial right for prosecutions of serious offenses, and that "there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision." *Duncan* v. *Louisiana,* 391 U. S. 145, 159 (1968).

To determine whether an offense is properly characterized as "petty," courts at one time looked to the nature of the offense and whether it was triable by a jury at common law. Such determinations became difficult, because many statutory offenses lack common-law antecedents. *Blanton* v.

*North Las Vegas,* 489 U. S. 538, 541, and n. 5 (1989). Therefore, more recently, we have instead sought "objective indications of the seriousness with which society regards the offense." *Frank* v. *United States,* 395 U. S. 147, 148 (1969); accord, *District of Columbia* v. *Clawans,* 300 U. S. 617, 628 (1937). Now, to determine whether an offense is petty, we consider the maximum penalty attached to the offense. This criterion is considered the most relevant with which to assess the character of an offense, because it reveals the legislature's judgment about the offense's severity. "The judiciary should not substitute its judgment as to seriousness for that of a legislature, which is far better equipped to perform the task . . . ." *Blanton,* 489 U. S., at 541 (internal quotation marks omitted). In evaluating the seriousness of the offense, we place primary emphasis on the maximum prison term authorized. While penalties such as probation or a fine may infringe on a defendant's freedom, the deprivation of liberty imposed by imprisonment makes that penalty the best indicator of whether the legislature considered an offense to be "petty" or "serious." *Id.,* at 542. An offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious. *Id.,* at 543; *Codispoti* v. *Pennsylvania,* 418 U. S. 506, 512 (1974).

Here, the maximum authorized penalty for obstruction of mail is six months' imprisonment—a penalty that presumptively places the offense in the "petty" category. We face the question whether petitioner is nevertheless entitled to a jury trial, because he was tried in a single proceeding for two counts of the petty offense so that the potential aggregated penalty is 12 months' imprisonment.

Petitioner argues that, where a defendant is charged with multiple petty offenses in a single prosecution, the Sixth Amendment requires that the aggregate potential penalty be the basis for determining whether a jury trial is required.

Although each offense charged here was petty, petitioner faced a potential penalty of more than six months' imprisonment; and, of course, if any offense charged had authorized more than six months' imprisonment, he would have been entitled to a jury trial. The Court must look to the aggregate potential prison term to determine the existence of the jury trial right, petitioner contends, not to the "petty" character of the offenses charged.

We disagree. The Sixth Amendment reserves the jury trial right to defendants accused of serious crimes. As set forth above, we determine whether an offense is serious by looking to the judgment of the legislature, primarily as expressed in the maximum authorized term of imprisonment. Here, by setting the maximum authorized prison term at six months, the Legislature categorized the offense of obstructing the mail as petty. The fact that petitioner was charged with two counts of a petty offense does not revise the legislative judgment as to the gravity of that particular offense, nor does it transform the petty offense into a serious one, to which the jury trial right would apply. We note that there is precedent at common law that a jury trial was not provided to a defendant charged with multiple petty offenses. See, e. g., Queen v. Matthews, 10 Mod. 26, 88 Eng. Rep. 609 (Q. B. 1712); King v. Swallow, 8 T. R. 285, 101 Eng. Rep. 1392 (K. B. 1799).

Petitioner nevertheless insists that a defendant is entitled to a jury trial whenever he faces a deprivation of liberty for a period exceeding six months, a proposition for which he cites our precedent establishing the six-months' prison sentence as the presumptive cutoff for determining whether an offense is "petty" or "serious." To be sure, in the cases in which we sought to determine the line between "petty" and "serious" for Sixth Amendment purposes, we considered the severity of the authorized deprivation of liberty as an indicator of the legislature's appraisal of the offense. See Blanton, supra, at 542–543; Baldwin v. New York, 399 U. S. 66,

68–69 (1970) (plurality opinion). But it is now settled that a legislature's determination that an offense carries a maximum prison term of six months or less indicates its view that an offense is "petty." *Blanton, supra,* at 543. Where we have a judgment by the legislature that an *offense* is "petty," we do not look to the potential prison term faced by a *particular defendant* who is charged with more than one such petty offense. The maximum authorized penalty provides an "objective indicatio[n] of the seriousness with which society regards the offense," *Frank,* 395 U. S., at 148, and it is that indication that is used to determine whether a jury trial is required, not the particularities of an individual case. Here, the penalty authorized by Congress manifests its judgment that the offense is petty, and the term of imprisonment faced by petitioner by virtue of the second count does not alter that fact.

Petitioner directs our attention to *Codispoti* for support for the assertion that the "aggregation of multiple petty offenses renders a prosecution serious for jury trial purposes." Brief for Petitioner 18. *Codispoti* is inapposite. There, defendants were each convicted at a single, nonjury trial for several charges of criminal contempt. The Court was unable to determine the legislature's judgment of the character of that offense, however, because the legislature had not set a specific penalty for criminal contempt. In such a situation, where the legislature has not specified a maximum penalty, courts use the severity of the penalty actually imposed as the measure of the character of the particular offense. *Codispoti, supra,* at 511; *Frank, supra,* at 149. Here, in contrast, we need not look to the punishment actually imposed, because we are able to discern Congress' judgment of the character of the offense.

Furthermore, *Codispoti* emphasized the special concerns raised by the criminal contempt context. Contempt "often strikes at the most vulnerable and human qualities of a judge's temperament. Even where the contempt is not a di-

rect insult to the court . . . it frequently represents a rejection of judicial authority, or an interference with the judicial process . . . ." *Codispoti*, 418 U. S., at 516 (internal quotation marks omitted); see also *Mayberry* v. *Pennsylvania*, 400 U. S. 455, 465–466 (1971). In the face of courtroom disruption, a judge may have difficulty maintaining the detachment necessary for fair adjudication; at the same time, it is a judge who "determines which and how many acts of contempt the citation will cover," "determine[s] guilt or innocence absent a jury," and "impose[s] the sentence." *Codispoti*, 418 U. S., at 515. Therefore, *Codispoti* concluded that the concentration of power in the judge in the often heated contempt context presented the "very likelihood of arbitrary action that the requirement of jury trial was intended to avoid or alleviate." *Ibid.* The benefit of a jury trial, "'as a protection against the arbitrary exercise of official power,'" was deemed particularly important in that context. *Id.*, at 516 (quoting *Bloom* v. *Illinois*, 391 U. S. 194, 202 (1968)).

The absence of a legislative judgment about the offense's seriousness, coupled with the unique concerns presented in a criminal contempt case, persuaded us in *Codispoti* that, in those circumstances, the jury trial right should be determined by the aggregate penalties actually imposed. Codispoti was held to be entitled to a jury trial, because the sentence actually imposed on him for criminal contempt exceeded six months. By comparison, in *Taylor* v. *Hayes*, 418 U. S. 488 (1974), which similarly involved a defendant convicted of criminal contempt in a jurisdiction where the legislature had not specified a penalty, we determined that the defendant was not entitled to a jury trial, because the sentence actually imposed for criminal contempt did not exceed six months. Contrary to JUSTICE KENNEDY's argument, see *post*, at 331–334, 338, *Codispoti* and *Taylor* do not stand for the sweeping proposition that, outside their narrow context, the jury trial right is determined by the aggregate penalties faced by a defendant.

Certainly the aggregate potential penalty faced by petitioner is of serious importance to him. But to determine whether an offense is serious for Sixth Amendment purposes, we look to the legislature's judgment, as evidenced by the maximum penalty authorized. Where the offenses charged are petty, and the deprivation of liberty exceeds six months only as a result of the aggregation of charges, the jury trial right does not apply. As petitioner acknowledges, even if he were to prevail, the Government could properly circumvent the jury trial right by charging the counts in separate informations and trying them separately.

The Constitution's guarantee of the right to a jury trial extends only to serious offenses, and petitioner was not charged with a serious offense. That he was tried for two counts of a petty offense, and therefore faced an aggregate potential term of imprisonment of more than six months, does not change the fact that the Legislature deemed this offense petty. Petitioner is not entitled to a jury trial.

Because petitioner is not entitled to a jury trial, we need not reach the question whether a judge's self-imposed limitation on sentencing may affect the jury trial right.

The judgment of the Court of Appeals for the Second Circuit is affirmed.

*It is so ordered.*

JUSTICE KENNEDY, with whom JUSTICE BREYER joins, concurring in the judgment.

This petitioner had no constitutional right to a jury trial because from the outset it was settled that he could be sentenced to no more than six months' imprisonment for his combined petty offenses. The particular outcome, however, should not obscure the greater consequence of today's unfortunate decision. The Court holds that a criminal defendant may be convicted of innumerable offenses in one proceeding and sentenced to any number of years' imprisonment, all without benefit of a jury trial, so long as no one of the

offenses considered alone is punishable by more than six months in prison. The holding both in its doctrinal formulation and in its practical effect is one of the most serious incursions on the right to jury trial in the Court's history, and it cannot be squared with our precedents. The Sixth Amendment guarantees a jury trial to a defendant charged with a serious crime. *Duncan* v. *Louisiana,* 391 U. S. 145, 159 (1968). Serious crimes, for purposes of the Sixth Amendment, are defined to include any offense which carries a maximum penalty of more than six months in prison; the right to jury trial attaches to those crimes regardless of the sentence in fact imposed. *Id.,* at 159–160. This doctrine is not questioned here, but it does not define the outer limits of the right to trial by jury. Our cases establish a further proposition: The right to jury trial extends as well to a defendant who is sentenced in one proceeding to more than six months' imprisonment. *Codispoti* v. *Pennsylvania,* 418 U. S. 506 (1974); *Taylor* v. *Hayes,* 418 U. S. 488 (1974). To be more specific, a defendant is entitled to a jury if tried in a single proceeding for more than one petty offense when the combined sentences will exceed six months' imprisonment; taken together, the crimes then are considered serious for constitutional purposes, even if each is petty by itself, *Codispoti* v. *Pennsylvania, supra,* at 517.

The defendants in *Codispoti* and *Taylor* had been convicted of criminal contempt without juries in States where the legislatures had not set a maximum penalty for the crime. Taylor was convicted of nine separate contempts and sentenced to six months in prison. The Court held he was not entitled to a jury trial. Since the total sentence was only six months' imprisonment, the "eight contempts, whether considered singly or collectively, thus constituted petty offenses, and trial by jury was not required." *Taylor* v. *Hayes, supra,* at 496. Codispoti, by contrast, was convicted of seven contempts, and he was sentenced to six terms of six months' imprisonment and one term of three months'

imprisonment, each to run consecutively—a total of 39 months. We held he was entitled to a trial by jury because his aggregate sentence exceeded six months. In *Codispoti*, Pennsylvania made the same argument the United States makes today. It said no jury trial is required if the maximum punishment for each offense does not exceed six months in prison. We rejected the claim, saying:

> "Here the contempts . . . were tried seriatim in one proceeding, and the trial judge not only imposed a separate sentence for each contempt but also determined that the individual sentences were to run consecutively rather than concurrently, a ruling which necessarily extended the prison term to be served beyond that allowable for a petty criminal offense. As a result of this single proceeding, Codispoti was sentenced to three years and three months for his seven contemptuous acts . . . . In terms of the sentence imposed, which was obviously several times more than six months, [Codispoti] was tried for what was equivalent to a serious offense and was entitled to a jury trial.
>
> "We find unavailing respondent's contrary argument that [Codispoti's] contempts were separate offenses and that, because no more than a six months' sentence was imposed for any single offense, each contempt was necessarily a petty offense triable without a jury. Notwithstanding respondent's characterization of the proceeding, the salient fact remains that the contempts arose from a single trial, were charged by a single judge, and were tried in a single proceeding. The individual sentences imposed were then aggregated, one sentence taking account of the others and not beginning until the immediately preceding sentence had expired." *Codispoti* v. *Pennsylvania, supra,* at 516–517.

The reasons the Court offers to distinguish these cases are not convincing. The Court first suggests *Codispoti*'s holding

turned on the absence of a statutory maximum sentence for criminal contempt. *Ante,* at 328. The absence of a statutory maximum sentence, however, has nothing whatever to do with whether a court must aggregate the penalties that are in fact imposed for each crime. Indeed, we know the open-ended penalty to which Codispoti was subject was not the reason he was entitled a jury trial because *Taylor,* decided the same day, held that a defendant who was subject to the same kind of open-ended sentencing was not entitled to trial by jury because the sentence he received did not in fact exceed six months. Taken together, *Codispoti* and *Taylor* stand for the proposition the Court now rejects: Sentences for petty offenses must be aggregated in determining whether a defendant is entitled to a jury trial. Cf. *State* v. *McCarroll,* 337 So. 2d 475, 480 (La. 1976) (concluding *Codispoti* compelled it to overrule *Monroe* v. *Wilhite,* 233 So. 2d 535 (La.), cert. denied, 400 U. S. 910 (1970), which had held the Sixth Amendment did not require aggregation of penalties for petty offenses to determine whether a defendant is entitled to a jury trial).

The Court next suggests *Codispoti*'s holding was based on "the special concerns raised by the criminal contempt context." *Ante,* at 328. The *Codispoti* Court was indeed cognizant of the need "to maintain order in the courtroom and the integrity of the trial process," 418 U. S., at 513, and so approved summary conviction and sentencing for criminal contempt, "where the necessity of circumstances warrants," *id.,* at 514. The Court made clear that under those circumstances, a judge may sentence a defendant to more than six months' imprisonment for more than one contempt without empaneling a jury. *Id.,* at 514–515. The Court went on to hold, however, that when the judge postpones the contempt trial until after the immediate proceedings have concluded, the "ordinary rudiments of due process" apply. *Id.,* at 515. The "ordinary" rule required aggregation of penal-

ties, and because Codispoti's aggregated penalties exceeded six months' imprisonment, entitled him to a jury trial.

In authorizing retroactive consideration of the punishment a defendant receives, the holdings of *Codispoti* and *Taylor* must not be confused with the line of cases entitling a defendant to a jury trial if he is charged with a crime punishable by more than six months' imprisonment, regardless of the sentence he in fact receives. The two lines of cases are consistent. Crimes punishable by sentences of more than six months are deemed by the community's social and ethical judgments to be serious. See *District of Columbia* v. *Clawans*, 300 U. S. 617, 628 (1937). Opprobrium attaches to conviction of those crimes regardless of the length of the actual sentence imposed, and the stigma itself is enough to entitle the defendant to a jury. See J. Proffatt, Trial by Jury 149 (1877) (jury trial cannot be denied to a defendant subject to "punishment which would render him infamous [or] affix to him the ignominy of a criminal"). This rationale does not entitle a defendant to trial by jury if he is charged only with petty offenses; even if they could result in a long sentence when taken together, convictions for petty offenses do not carry the same stigma as convictions for serious crimes.

The imposition of stigma, however, is not the only or even the primary consequence a jury trial serves to constrain. As *Codispoti* recognizes, and as ought to be evident, the Sixth Amendment also serves the different and more practical purpose of preventing a court from effecting a most serious deprivation of liberty—ordering a defendant to prison for a substantial period of time—without the government's persuading a jury he belongs there. A deprivation of liberty so significant may be exacted if a defendant faces punishment for a series of crimes, each of which can be punished by no more than six months' imprisonment. The stakes for a defendant may then amount in the aggregate to many years in prison, in which case he must be entitled to interpose a jury between himself and the government. If the trial court

rules at the outset that no more than six months' imprisonment will be imposed for the combined petty offenses, however, the liberty the jury serves to protect will not be endangered, and there is no corresponding right to jury trial.

Although *Codispoti* and *Taylor* are binding precedents, my conclusion rests also on a more fundamental point, one the Court refuses to confront: The primary purpose of the jury in our legal system is to stand between the accused and the powers of the State. Among the most ominous of those is the power to imprison. Blackstone expressed this principle when he described the right to trial by jury as a "strong . . . barrier . . . between the liberties of the people and the prerogative of the crown." 4 W. Blackstone, Commentaries *349–*350. See also W. Forsyth, History of Trial by Jury 426 (1852) ("[I]t would be difficult to conceive a better security than this right affords against any exercise of arbitrary violence on the part of the crown or a government acting in the name of the crown. No matter how ardent may be its wish to destroy or crush an obnoxious opponent, there can be no real danger from its menaces or acts so long as the party attacked can take refuge in a jury fairly and indifferently chosen"). In more recent times we have said the right to jury trial "reflect[s] a profound judgment about the way in which law should be enforced and justice administered." *Duncan* v. *Louisiana,* 391 U. S., at 155. Providing a defendant with the right to be tried by a jury gives "him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Id.,* at 156. These considerations all are present when a judge in a single case sends a defendant to prison for years, whether the sentence is the result of one serious offense or several petty offenses.

On the Court's view of the case, however, there is no limit to the length of the sentence a judge can impose on a defendant without entitling him to a jury, so long as the prosecutor

carves up the charges into segments punishable by no more than six months apiece. Prosecutors have broad discretion in framing charges, see *Ball* v. *United States*, 470 U. S. 856, 859 (1985), for criminal conduct often does not arrange itself in neat categories. In many cases, a prosecutor can choose to charge a defendant with multiple petty offenses rather than a single serious offense, and so prevent him under today's holding from obtaining a trial by jury while still obtaining the same punishment. Cf. *People* v. *Estevez*, 163 Misc. 2d 839, 847, 622 N. Y. S. 2d 870, 876 (Crim. Ct. 1995) ("The People cannot have it both ways. They cannot in good faith seek consolidation of several B misdemeanors, which have been reduced from Class A misdemeanors, and then after conviction of more than two offenses seek consecutive sentences which would expose the defendant to over six months' imprisonment while at the same time deny the defendant the right to a jury trial").

The Court does not aid its position when it notes, with seeming approval, the Government's troubling suggestion that a committed prosecutor could evade the rule here proposed by bringing a series of prosecutions in separate proceedings, each for an offense punishable by no more than six months in prison. *Ante*, at 330. Were a prosecutor to take so serious a view of a defendant's conduct as to justify the burden of separate prosecutions, I should think the case an urgent example of when a jury is most needed if the offenses are consolidated. And if a defendant is subject to repeated bench trials because of a prosecutor's scheme to confine him in jail for years without benefit of a jury trial, at least he will be provided certain safeguards as a result. The prosecution's witnesses, and its theory of the case, will be tested more than once; the defendant will have repeated opportunities to convince the judge, or more than one judge, on the merits; and quite apart from questions of included offenses, the government may be barred by collateral estoppel if a fact is found in favor of the defendant and is dispositive

in later trials, see *Ashe* v. *Swenson,* 397 U. S. 436 (1970). Finally, the prosecutor will have to justify, at least to the voters, this peculiar exercise of discretion. In short, if a prosecutor seeks to achieve a result forbidden in one trial by the expedient of pursuing many, the process itself will constrain the prosecutor and protect the defendant in important ways. The Court's holding, of course, makes it easier rather than more difficult for a government to evade the constraints of the Sixth Amendment when it seeks to lock up a defendant for a long time.

The significance of the Court's decision quite transcends the peculations of Ray Lewis, the petitioner here, who twice filched from the mails. The decision affects more than repeat violators of traffic laws, persons accused of public drunkenness, persons who persist in breaches of the peace, and the wide range of eccentrics capable of disturbing the quiet enjoyment of life by others. Just as alarming is the threat the Court's holding poses to millions of persons in agriculture, manufacturing, and trade who must comply with minute administrative regulations, many of them carrying a jail term of six months or less. Violations of these sorts of rules often involve repeated, discrete acts which can result in potential liability of years of imprisonment. See, *e. g.,* 16 U. S. C. § 707 (violation of migratory bird treaties, laws, and regulations); 29 U. S. C. § 216 (penalties under Fair Labor Standards Act); 36 CFR § 1.3 (1995) (violation of National Park Service regulations); *id.,* § 261.1b (violation of Forest Service prohibitions); *id.,* § 327.25 (violation of Army Corps of Engineers water resource development project regulations); 43 CFR § 8351.1–1(b) (1995) (violation of Bureau of Land management regulations under National Trails System Act of 1968). Still, under the Court's holding it makes no difference whether a defendant is sentenced to a year in prison or for that matter to 20 years: As long as no single violation charged is punishable by more than six months, the defendant has no right to a jury.

The petitioner errs in the opposite direction. He argues a defendant is entitled to a jury trial whenever the penalties for the crimes charged combine to exceed six months' imprisonment, even if the trial judge rules that no more than six months' imprisonment will be imposed. We rejected this position in *Taylor*, however, and rightly so. A defendant charged with multiple petty offenses does not face the societal disapprobation attaching to conviction of a serious crime, and, so long as the trial judge rules at the outset that no more than six months' imprisonment will be imposed, the defendant does not face a serious deprivation of liberty. A judge who so rules is not withdrawing from a defendant a constitutional right to which he is entitled, as petitioner claims; the defendant is not entitled to the right to begin with if there is no potential for more than six months' imprisonment. The judge's statement has no independent force but only clarifies what would have been the law in its absence. *Codispoti* holds that a judge cannot impose a sentence exceeding six months' imprisonment for multiple petty offenses without conducting a jury trial, regardless of whether the judge announces that fact from bench.

*Amici* in support of petitioner say it is inappropriate for judges to make these kinds of sentencing decisions before trial. The Court approved just this practice, however, in *Scott* v. *Illinois*, 440 U. S. 367 (1979), holding the Sixth Amendment does not require a judge to appoint counsel for a criminal defendant in a misdemeanor case if the judge will not sentence the defendant to any jail time. So too, Federal Rule of Criminal Procedure 58(a)(2) authorizes district courts not to apply the Federal Rules of Criminal Procedure in petty offense prosecutions for which no sentence of imprisonment will be imposed. The rules contemplate the determination being made before trial. Fed. Rule Crim. Proc. 58(a)(3).

Petitioner's proposal would impose an enormous burden on an already beleaguered criminal justice system by in-

creasing to a dramatic extent the number of required jury trials. There are thousands of instances where minor offenses are tried before a judge, and we would err on the other side of sensible interpretation were we to hold that combining petty offenses in a single proceeding mandates a jury trial even when all possibility for a sentence longer than six months has been foreclosed.

*　　*　　*

When a defendant's liberty is put at great risk in a trial, he is entitled to have the trial conducted to a jury. This principle lies at the heart of the Sixth Amendment. The Court does grave injury to the Amendment by allowing a defendant to suffer a prison term of any length after a single trial before a single judge and without the protection of a jury. I join only the Court's judgment.

JUSTICE STEVENS, with whom JUSTICE GINSBURG joins, dissenting.

The Sixth Amendment provides that the accused is entitled to trial by an impartial jury "[i]n all criminal prosecutions." As JUSTICE KENNEDY persuasively explains, the "primary purpose of the jury in our legal system is to stand between the accused and the powers of the State." *Ante*, at 335. The majority, relying exclusively on cases in which the defendant was tried for a single offense, extends a rule designed with those cases in mind to the wholly dissimilar circumstance in which the prosecution concerns multiple offenses. I agree with JUSTICE KENNEDY to the extent he would hold that a prosecution which exposes the accused to a sentence of imprisonment longer than six months, whether for a single offense or for a series of offenses, is sufficiently serious to confer on the defendant the right to demand a jury. See *ante*, at 335–337.

Unlike JUSTICE KENNEDY, however, I believe that the right to a jury trial attaches when the prosecution begins.

I do not quarrel with the established view that only defendants whose alleged misconduct is deemed serious by the legislature are entitled to be judged by a jury. But in my opinion, the legislature's determination of the severity of the charges against a defendant is properly measured by the maximum sentence authorized for the prosecution as a whole. The text of the Sixth Amendment supports this interpretation by referring expressly to "criminal *prosecutions.*"

Nothing in our prior precedents conflicts with this view. True, some of our past cases (the ones on which the majority relies) have referred to an "offense" rather than a "prosecution." See, *e. g., Blanton* v. *North Las Vegas,* 489 U. S. 538, 541 (1989); *Frank* v. *United States,* 395 U. S. 147, 148 (1969). But the words were effectively interchangeable in those cases because the prosecutions at issue concerned only one offense. The contempt cases, which do involve multiple offenses, demonstrate that aggregation—that is, deciding whether the defendant has a right to a jury trial on the basis of the prosecution rather than the individual offenses—is appropriate.

The majority attempts to distinguish *Codispoti* v. *Pennsylvania,* 418 U. S. 506 (1974), by suggesting that the Court's decision in that case turned on the absence of any statutory measure of severity. *Ante,* at 328. That observation is certainly correct to a point: The contempt cases are special because the sentence actually imposed provides the only available yardstick by which to judge compliance with the command of the Sixth Amendment. But that unique aspect of the cases does not speak to the aggregation question. Having determined that the defendants in *Codispoti* were sentenced to no more than six months for any individual contempt, it would follow from the rule the Court announces today that a jury trial was unnecessary. Yet we reversed and remanded, holding that "each contemnor was tried for

what was *equivalent* to a serious offense and was [therefore] entitled to a jury trial." 418 U. S., at 517 (emphasis added).*

JUSTICE KENNEDY reads a second contempt case, *Taylor* v. *Hayes*, 418 U. S. 488 (1974), as standing for the proposition that a judge may defeat the jury trial right by promising a short sentence. He is mistaken. The dispositive fact in *Taylor* was not that the prison term imposed was only six months but rather that the actual sentence, acting as a proxy for the legislative judgment, demonstrated that "the State itself has determined that the contempt is not so serious as to warrant more than a six-month sentence." *Id.*, at 496. In this case, by contrast, we have an explicit statutory expression of the legislative judgment that this prosecution is serious—the two offenses charged are punishable by a maximum prison sentence of 12 months.

All agree that a judge may not strip a defendant of the right to a jury trial for a serious crime by promising a sentence of six months or less. This is so because "[o]pprobrium attaches to conviction of those crimes regardless of the length of the actual sentence imposed," *ante*, at 334 (KENNEDY, J., concurring in judgment). In my view, the same rule must apply to prosecutions involving multiple offenses which are serious by virtue of their aggregate possible sentence. I see no basis for assuming that the dishonor associated with multiple convictions for petty offenses is less than the dishonor associated with conviction of a single serious crime. Because the right attaches at the moment of prosecution, a judge may not deprive a defendant of a jury trial by making a pretrial determination that the crimes charged will not warrant a sentence exceeding six months.

---

*The majority's speculation that the Court's holding in *Codispoti* was limited to criminal contempt cases, *ante*, at 328–329, is persuasively answered by JUSTICE KENNEDY. See *ante*, at 333–334 (opinion concurring in judgment).

342

Petitioner is entitled to a jury trial because he was charged with offenses carrying a statutory maximum prison sentence of more than six months. I therefore would reverse the judgment of the Court of Appeals and, for that reason, I respectfully dissent.