**UNITED STATES of America,**

v.

**John F. SWEENEY, Jr., Defendant.**

**No. Crim. 98–10079–REK.**

United States District Court,
D. Massachusetts.

Aug. 16, 1999.

John C. McBride, McBride & Keefe, Boston, MA, Stephen F. Gordon, Gordon & Wise, Boston, MA, John C. McBride, McBride and Associates, Boston, MA, for John Sweeney, Jr., defendant.

Timothy Q. Feeley, U.S. Atty's Office, Boston, MA, for U.S.

## I. The Indictment

KEETON, District Judge.

The one-count indictment in this case charges defendant John Sweeney with criminal contempt. It alleges that he:

> did unlawfully, knowingly, and intentionally disobey and resist a lawful order, rule, decree and command of a Court of the United States of America, to wit: the May 29, 1997 and February 19, 1998 orders issued by United States District Judge Edward F. Harrington requiring the defendant to vacate the properties known and numbered as 776 Bay Road and 24 Meyer Lane, Hamilton, Massachusetts. All in violation of Title 18, United States Code, Section 401(3).

Docket No. 6.

## II. The Court's Decision for Nonjury Trial

On April 9, 1999, during a hearing on numerous pretrial motions, defendant filed in open court his Motion for Jury trial. He had previously filed Defendant's Memorandum of Law Regarding the Right to a Jury Trial (Docket No. 51, filed March 22, 1999).

The government opposed the motion for jury trial, citing *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), and arguing that defendant had no entitlement to jury trial because the criminal contempt charged in the indictment in this case is a petty offense and the government had not sought and would not seek a

sentence of greater than six months imprisonment. *See* Government Memorandum, Docket No. 51 at 12–16.

Defendant argued that the government could not defeat defendant's demand for jury trial by deciding that it would recommend a sentence of six months or less, citing *Lewis v. United States,* 518 U.S. 322, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996) and *Internat'l Union, United Mine Workers v. Bagwell,* 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994).

After consultation with counsel on this matter during the hearing of April 9, 1999 and consideration of further submissions after that hearing, I determined that it was appropriate, in view of submissions supporting a court determination that the circumstances of this case would warrant a sentence not exceeding six months of imprisonment, to advise the parties that this determination is made and that the case would proceed to trial before the court without a jury. This ruling was made before the scheduled trial date, and the case proceeded to trial before the court without a jury.

### III. Findings, Conclusions, and Order of April 30, 1999

 The trial before the court without a jury concluded with the Findings, Conclusion, and Order of April 30, 1999, finding the defendant guilty of the offense charged in Count I of the indictment, ordering preparation of a Presentence Report, and directing the Clerk to set a date for the sentencing hearing and issue an order with respect to timely responses to the Presentence Report. The reasons for the finding of guilt and the findings and conclusions as to the elements of the offense charged in Count I were summarized in Part VII of the April 30 document as follows:

In order to sustain a conviction on the charge of criminal contempt, the government must prove beyond reasonable doubt each of the following three elements: a lawful court order was in ef-

fect; defendant acted or failed to act in a way contrary to what that order required of him; and he did so willfully. I make each of the following findings beyond reasonable doubt:

(1) Each of the federal court orders dated May 29, 1997 and identified more precisely in Part VI above was in force on February 28, 1998, was effective, and required defendant to vacate the Properties;

(2) the consolidated order of February 19, 1998 was in force on February 28, 1998, was effective, and required defendant to vacate the Properties;

(3) defendant had notice of these orders and knew their content; and

• (4) defendant willfully disobeyed each of the orders that was directed to him.

I find beyond a reasonable doubt that the May 29, 1997 and February 19, 1998 orders arose from district court decisions that were subsequently affirmed by the Court of Appeals. The language of the orders plainly required defendant to vacate the Properties. Defendant's knowledge of the content of the orders is demonstrated by credible evidence of statements made by him and is confirmed by reasoned inferences I draw about his opportunity to know from credible testimony of Timothy Bane, Earl Day, and Nancy McGillivray. Defendant's knowledge is also confirmed by reports about the orders that appeared on the qui-tam website. Defendant's opportunity to know the content of the February 19, 1998 consolidated order is also confirmed by testimony of the Deputy U.S. Marshal who described posting the order at various places around the Properties, including the front door of the 24 Meyer Lane residence. On the evidence received at trial, I find beyond reasonable doubt that John Sweeney took that opportunity and did know, before February 28, 1998, the contents of the February 19, 1998, consolidated order.

The foregoing findings have been made on the basis of all the evidence received in evidence at trial, but without consideration of any part of that evidence that was received subject to limitation for any purpose to which the prohibition or limitation applied.

I have explicitly considered also whether I would make the same findings beyond reasonable doubt if excluding from my consideration the evidence of what occurred during the mediation before Judge Mazzone in early August of 1997. I so find, beyond reasonable doubt.

For all the foregoing reasons, I find the defendant John Sweeney guilty of the offense charged in Count I of the indictment.

Findings, Conclusions, and Order, April 30, 1999, pages 30–32.

## IV. The Sentencing Decision and Reasons for Making It

### A. Statutory and Guidelines Provisions

■ Explaining the Sentencing Commission's harmonization of "the mandate of uniformity and the mandate of proportionality," the U.S.S.G. Guidelines Manual gives this example:

> For example, a single category for robbery that included armed and unarmed robberies, robberies with and without injuries, robberies of a few dollars and robberies of millions, would be far too broad.

U.S.S.G. Guidelines Manual, Chapter One, Part A, 3 *The Basic Approach* (Policy Statement), third paragraph (November 1, 1998). I conclude that a single category for criminal contempt, also, would be far too broad.

The Sentencing Table of the Guidelines Manual contains 43 "Offense Levels," for which the "months of imprisonment" within the Guidelines range vary from "life" imprisonment at Offense level 43 down to 0–6 months in the lowest eight "Offense Levels" for an offender in the lowest Criminal History Category (I), based on "Criminal History Points."

The Commission used empirical compilations of data regarding pre-Guidelines sentences for types of offenses in determining the Guidelines ranges. Criminal contempt, however, was one of several types of offenses for which so few instances appeared in the data compilations that no offense type appears in Chapter Two, §§ 2A1.1 through 2T3.1. Instead, we must look to the ending of Chapter Two, "Part X—Other Offenses." Within Part X, the first four subdivisions apply to categories of offenses labeled as follows:

1. Conspiracies, Attempts, Solicitations
2. Aiding and Abetting
3. Accessory After the Fact
4. Misprision of Felony

U.S.S.G. Guidelines Manual, Chapter Two, Part X. No close analogy to criminal contempt appears among these four subdivisions of Part X of Chapter Two.

The final subdivision of Part X of Chapter Two "5. *All Other Offenses.*" It contains only one Guidelines section, which is as follows:

> If the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline. If there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) shall control, except that any guidelines and policy statements that can be applied meaningfully in the absence of a Chapter Two offense guideline shall remain applicable.

U.S.S.G. § 2X5.1.

The first paragraph of the *"Background"* statement under § 2X5.1 is as follows:

> Many offenses, especially assimilative crimes, are not listed in the Statutory Index or in any of the lists of Statutory Provisions that follow each offense guideline. Nonetheless, the specific guidelines that have been promulgated

cover the type of criminal behavior that most such offenses proscribe. The court is required to determine if there is a sufficiently analogous offense guideline, and, if so, to apply the guideline that is most analogous. Where there is no sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553(b) control. That statute provides in relevant part as follows: "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in [18 U.S.C. § 3553] subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offender other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission."

*Id., Background.*

A relevant statutory provision referred to but not quoted in this *"Background"* statement is as follows:

The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(1) and (2).

## B. The Presentence Report and Objections of the Parties

The August 5, 1999 Addendum to the Presentence Report reports no objections by the government.

I find that the Probation Officer's response to Defendant's Objections # 1, # 2, # 4, # 6, # 7, # 8, # 9, # 10, and # 11 have been satisfied by the Probation Officer's amendment of the Presentence Report.

I find that the Probation Officer's response to Defendant's Objections # 3, # 5, # 12, # 13, # 14, # 15, and # 16 correct any errors in the Report and call attention to additional facts and arguments, without making them a part of the Probation Officer's findings. As to these additional facts and arguments, I overrule these Defendant's Objections except to the limited extent that I refer to them and state my findings and conclusions in the remainder of this Memorandum on Sentencing.

## C. Policies of the Criminal Law on Willful Disobedience of Court Orders

The considerations a court appropriately takes into account in making a sentencing decision tailored to the circumstances of a particular conviction of criminal contempt include issues concerning the policies of criminal law generally in dealing with willful disobedience of court orders.

From one point of view, disobeying a court order in a civil action that preceded the indictment for contempt may be seen as one of the most troubling forms of disrespect for law because it manifests unwillingness to accept society's provision of an orderly process for dispute resolution through court proceedings. Every person who loses in an American trial court, state or federal, has a right to appeal to a higher tribunal within the Third Branch of that government, state or federal, of which the

trial court is a unit. Of course, an individual loser may want to assert that the trial court's order is so deeply flawed that the loser should not be required to comply, even temporarily. The loser can make that contention in an expedited appeal, but the loser has the burden of showing the appellate tribunal grounds of justification. The assertion that, without the permission of either the trial court or the appellate court, the loser is free to act as if no adverse court order had issued may be seen as defying not just a single order but the entire system for lawful and orderly resolution of disputes. If opposing individuals in civil disputes were each allowed to act in this way, as if free of any lawful restraint even after a trial court decision, the incentives to disruption and violence would be intolerable.

Another point of view is also material, however. The American legal system does make allowances for forms of civil disobedience that do not carry with them intolerable incentives to disruption and violence. For example, one who for reasons of fidelity to religious beliefs is willing to accept respectfully the legal system's prescribed term of imprisonment rather than comply with a governmental directive backed up by court order may be allowed to discharge an obligation to society in this way.

Also, even in less dramatic circumstances than those ordinarily associated with the classic forms of civil disobedience, the American legal system takes a tolerant rather than harsh view of disobedience of authority that is less respectful but nonetheless unlikely to lead to disruption and violence. For example, the legal system is tolerant, to a considerable degree, of behavior of the kind ordinarily connoted by the term "scofflaw." The legal system does not provide long prison sentences for even the more persistent parking and traffic offenders, unless the disorderly behavior reaches a dimension that may be seen as involving publicly manifested defiance, a potential for publicly disruptive conduct, and a significant possibility of violence.

Within reasonable limits, "scofflaw" behavior is accepted as part of the price associated with legal protection of individual freedom. In part this legal protection is constitutional in origin, but the law protects freedom of action and expression in ways beyond the scope of First Amendment constraints.

In summary, the American legal system strikes an accommodation between the two contrasting perspectives on disobeying lawful orders described in this Memorandum. It seeks to harmonize the sets of interests that animate these contrasting perspectives to serve both sets of interests as far as possible rather than entirely sacrificing one to serve the other. The aim is equal freedom and equal justice.

The sentencing decision in this case must be a decision that is compatible with these basic characteristics of American law. I read the relevant statutes and declarations of the United States Sentencing Commission with confidence that neither Congress nor the Commission has manifested a directive for either a harsher or a more lenient sentence than one within this framework of analyses.

## D. The Sentencing Decision

Defendant John Sweeney willfully disobeyed orders of the United States district court in civil proceedings, even after affirmance of the orders by the Court of Appeals, and his conduct persisted to the point of committing the offense of criminal contempt. Despite some behavior, however, that carried a message of risk that he would react with violence and encourage others to do so in supporting him, he had an opportunity to pull back from that dangerous position. The measured response of the United States Marshal to defendant's dangerous behavior gave defendant an opportunity, which in the end he accepted, not to carry his defiance that far. I conclude that it is appropriate to sentence to a term of imprisonment not exceeding six months, and I proceed to consider all other factors that may reasonably have a

bearing on what the sentence should be within the considerable range of sentencing options that remain. They include other forms of sanctions, imposed together with a term of imprisonment, or imposed without a term of imprisonment.

Defendant's conduct does not warrant a sentence at the low end of the 0–6 months range.

It was in fact one of the very troubling forms of disrespect for law because it manifested defiance of society's provisions for resolving disputes by orderly processes through court proceedings.

Also, on the other hand, it was in fact not among the most serious courses of conduct within the 0–6 months range because defendant did pull back from engaging in violence himself or arranging for others to be on site to engage in violence or threats of violence when the United States Marshal finally made an entry by breaking and entering to carry out the court order to remove the defendant from the premises.

In the exercise of the discretion that I must exercise to determine where the sentence should be within the range of 0–6 months, I determine that a sentence of 120 days is appropriate in this case.

The sentence of confinement therefore will be 120 days in the Custody of the Bureau of Prisons.

A Special Assessment of $50 is imposed, as required by law.

No period of supervision is imposed.

No fine is imposed.

Restitution is not applicable.