STATE OF LOUISIANA

VERSUS

VIUSQUI J. PEREZ-ESPINOSA

NO. 19-KA-601

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 17-415, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING


September 22, 2020


**STEPHEN J. WINDHORST**
**JUDGE**


Panel composed of Judges Stephen J. Windhorst,
Hans J. Liljeberg, and John J. Molaison, Jr.


**AFFIRMED IN PART; VACATED IN PART; REMANDED**
    **SJW**
    **HJL**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Anne M. Wallis
     Kellie M. Rish
     Richard L. Olivier

COUNSEL FOR DEFENDANT/APPELLANT,
VIUSQUI J. PEREZ-ESPINOSA
     Jane L. Beebe

**WINDHORST, J.**

Defendant, Viusqui Perez-Espinosa, appeals his convictions and sentences for second degree murder and obstruction of justice. For the reasons that follow, we affirm defendant's conviction and sentence for obstruction of justice, vacate defendant's conviction and sentence for second degree murder, and remand the matter to the trial court for further proceedings.

**Facts and Procedural History**

After a trial, on March 26, 2018, a twelve-person jury convicted defendant by an eleven-to-one verdict of second degree murder in violation of La. R.S. 14:30.1 (count one) and unanimously of obstruction of justice in violation of La. R.S. 14:130.1 (count two). On April 25, 2018, defendant filed a written motion for new trial and for post-verdict judgment of acquittal and a written motion for appeal and designation of record. On April 26, 2018, the date of sentencing, the trial court granted defendant's motion for appeal and designation of the record. After granting the motion for appeal, the trial court heard and denied defendant's motion for new trial and for post-verdict judgment of acquittal. The trial court sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on count one and 40 years at hard labor on count two, with the sentences to be served consecutively. Defendant filed a motion to reconsider the sentences in open court, which the trial court denied.

On defendant's first appeal, this Court vacated his sentences and remanded for resentencing after finding that the trial court erred in denying defendant's motion for new trial and for post-verdict judgment of acquittal because it did not have the jurisdiction at that time to render a ruling on the motion. State v. Perez-Espinosa, 18-576 (La. App. 5 Cir. 4/10/19), 269 So.3d 1119.

Per this Court's previous opinion, the trial court held a hearing on September 11, 2019 to address defendant's motions and resentence defendant. Before

resentencing defendant, the trial court denied defendant's motion for new trial and motion for post-verdict judgment of acquittal. The trial court resentenced defendant to life in prison at hard labor without benefit of parole, probation, or suspension of sentence on count one and forty years imprisonment at hard labor on count two. The trial court ordered these sentences to run consecutively. Counsel adopted the previously-filed motion to reconsider sentence; which the trial court denied. This appeal followed.

At trial, the following facts were revealed. The victim, Ives Alexis Portales-Lara, was missing on the night of Friday, November 11, 2016. That day, Elena Earwood, a co-worker, brought the victim home from work around 5:45 p.m. Earlier in the day at work, the victim told her that he was texting with T.C., his female roommate, who was having issues with defendant because defendant wanted to move back in with her. T.C. had been sexually involved with defendant, and had moved in with him at 255 Baylor Place, Apartment B. T.C. described that defendant was a jealous person and lived on and off at the apartment with her. After defendant was moved out of the apartment, T.C. and the victim began to have a romantic relationship. Due to their age differences, T.C. did not tell anyone about her relationship with the victim.

On November 8, 2016, T.C. had allowed defendant to move back in the apartment and to sleep on the sofa, but she told him she had no interest in a romantic relationship with him. At that time, she and the victim still had an on-going sexual relationship. Defendant asked her whether they were having a sexual relationship, but T.C. denied it. Defendant did not want the victim in the apartment.

According to T.C., on the morning of the day the victim disappeared, defendant told T.C. he wanted to be with her, grabbed her by her arms, threw her on the bed, and pulled down her pants and underwear. T.C. struggled and told defendant she was going to scream, and defendant told her not to do so. Defendant

then performed oral sex on T.C. and ejaculated onto her stomach. Afterwards, defendant began to cry, asked for her forgiveness, and then went to work. T.C. told the victim via text message what defendant had done.

That night, when T.C. arrived home, defendant was there lying on the couch. She noticed in the bathroom that the victim's belongings were gone, and wondered whether the victim had left without telling her goodbye or leaving her key. When T.C. asked defendant if he had seen him, defendant told her that he had gone to Wal-Mart, and when he got back, the victim was gone. T.C. did not notice anything unusual or out of place in the apartment. She tried to open the victim's bedroom door, but it was locked. During the weekend that the victim had gone missing, defendant cooked her favorite foods for her, sent her flowers, and cleaned the apartment.

On Tuesday, November 15, 2016, since the victim remained missing, Saidy Garcia (the victim's wife), Elena, and Carlos Lorenzana (the victim's pastor and co-worker) all went to the Kenner Police Department and spoke with Sergeant Jeffrey Adams. In response, Sergeant Adams, along with several other officers, went to the apartment. At the apartment, Sergeant Adam Schouest and Detective Bryan Weiter spoke to defendant with the assistance of Officer Alvarenga. Defendant showed them to the victim's bedroom. Sergeant Adams remained in the living room area, and while there, noticed a dark red blood-colored substance on the floor. As he walked around the apartment, he noticed more blood-like droplets on the walls of the living room and in the hallway leading to the victim's bedroom. At that time, both defendant and T.C. were asked to come to the police station to provide statements. Sergeant Adams also obtained a search warrant for the apartment.

Officers executed a search warrant on the apartment and discovered a substance determined to be blood throughout the apartment. Officers also found a substance determined to be blood in the trunk and backseat of defendant's vehicle.

DNA testing revealed that the blood substance found in the apartment and defendant's vehicle was the victim's blood.

Officer Alvarenga, Sergeant Schoeust, and Detective Weiter interviewed defendant. In the interview, defendant indicated that the last time he saw the victim was at work on Friday afternoon, when the victim was waiting for a ride home. Defendant denied he ever got into a disagreement or fight with the victim, or that he suspected the victim and T.C. were having a relationship. Defendant claimed that T.C. wanted to be with him, and denied anything happened with T.C. on Friday morning, or that he and the victim argued over him allegedly sexually assaulting T.C. The officers informed defendant that there was blood found on the walls and floor of the apartment and questioned him regarding whether there was a struggle between him and the victim. Defendant denied anything ever happened and told the officers that he would not know how to move the body as the victim was heavier than him, and he would be unable to clean all the blood by himself.

On December 29, 2016, at 8:35 a.m., the St. John Parish Sheriff's Office received a call from a fisherman located in the St. John Reserve Canal who reported that he saw what appeared to be a human arm floating in the water. The arm was found and collected as evidence.

On January 12, 2017, the St. John's Sheriff Office received a call from a pipeline construction worker who saw what appeared to be body parts floating in a waterway off of the Reserve Canal and underneath the I-10 bridge. Crime scene investigators found what appeared to be an upper thigh floating in the water, a black plastic garbage bag containing a thigh, and two legs from the knee down, a torso, and another black plastic garbage bag containing gray sweatpants and boxer briefs. Search and rescue found more plastic bags on January 13 and 14, 2017.

On January 13, 2017, Dr. Erin O'Sullivan, an expert in the field of forensic pathology, performed an autopsy on the torso, thighs, and lower legs, including the

feet. She did not observe any trauma to the limbs other than that they were separated from the spaces of the joints. Without being able to examine the head, neck, and left arm, Dr. O'Sullivan was unable to determine if there was trauma to those areas or the cause of death. In Dr. O'Sullivan's opinion, she believed that whoever disarticulated the victim's body parts did so with a degree of skill and strength. She also noticed cuts made into some of the bones. Dr. O'Sullivan took samples of the body parts for DNA analysis and subsequently learned they belonged to the victim. Also once the body parts were discovered, Dr. Marcela Zozaya, an expert in the fields of chemistry, biology, and DNA analysis and a forensic DNA analyst with the Jefferson Parish DNA Lab, determined that the DNA taken from the body parts matched the DNA found in the apartment and trunk and was that of the victim's DNA.

At trial, defendant testified that, when the victim came home after work on November 11, 2016, he was in the bathroom, and that the victim approached him from behind with a knife, which defendant could see in the bathroom mirror. He recalled that the two struggled, and the victim accidentally cut his own throat with the knife. Defendant stated that the victim started to bleed all over the hallway "like an open faucet." Defendant also stated that he was trying to stop the flow of blood, but the victim fainted in his arms. Defendant could tell that the victim did not have a pulse any longer, so he took the victim's covers from his bed and wrapped the victim in it. Defendant claimed that he did not call the police because he was afraid and thought they would not believe the victim cut his own throat.

Defendant testified that he cleaned the house because he did not want T.C. to find out what happened when she came home from work. He admitted that he put the victim's body parts into three trash bags and into his trunk and threw them out as he was driving. He denied ever wanting to hurt the victim and said it was an accident. He indicated that he threw the knife that the victim cut his own throat with

into the canals. Defendant also admitted that he lied to the police when he said he got home from work at 7:00 p.m. and claimed he did not know what happened to the victim.

**Law and Analysis**

Defendant asserts that the trial court erred in accepting a non-unanimous jury verdict in light of the Supreme Court's ruling in <u>Ramos v. Louisiana</u>, 590 U.S.—, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), and that this Court should vacate defendant's conviction and remand the matter to the trial court. The jury in this case returned a non-unanimous verdict for defendant's second degree murder conviction, but a unanimous verdict for his obstruction of justice conviction. Thus, the non-unanimous verdict issue applies only to the second degree murder conviction and sentence.

In <u>Ramos</u>, *supra*, the United States Supreme Court found that the Sixth Amendment right to a jury trial, as applied to the states by the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense. The Court concluded: "There can be no question either that the Sixth Amendment's unanimity requirement applies to state and federal trials equally. So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court." 140 S.Ct. at 1397. Based on <u>Ramos</u>, Louisiana courts will have to retry defendants who were convicted of serious offenses by non-unanimous juries and whose cases are still pending on direct appeal.

For purposes of the Sixth Amendment, federal law defines petty offenses as offenses subject to imprisonment of six months or less and serious offenses as offenses subject to imprisonment over six months. The Sixth Amendment's right to a jury trial only attaches to serious offenses. See generally <u>Lewis v. United States</u>, 518 U.S. 322, 327-28, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996). The penalty for

second degree murder as provided in La. R.S. 14:30.1 is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, and is thus a serious offense requiring a jury of twelve persons. See La. Const. Art. I, § 17; La. C.Cr.P. art. 782.

Considering <u>Ramos</u>, that this case is on direct appeal, and that the verdict for the second degree murder conviction was not unanimous, we vacate that conviction and sentence, and remand this matter to the trial court for further proceedings. Because the verdict for the obstruction of justice conviction was unanimous, we affirm that conviction.

Defendant also asserts that the trial court imposed an excessive sentence by ordering counts one and two to be served consecutively. Because we vacate the conviction and sentence on defendant's second degree murder conviction, consecutive sentences are no longer an issue in that only one sentence remains. Thus, this assignment of error is now moot.

**Errors Patent**

This Court routinely reviews the record for errors patent in accordance with La. C.Cr.P. art. 920; <u>State v. Oliveaux</u>, 312 So.2d 337 (La. 1975). Our review indicates that the trial court resentenced defendant on the same date that it denied his motion for new trial and for post-verdict judgment of acquittal. La. C.Cr.P. art. 873 provides that: "If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately." Although Article 873 does not explicitly require a twenty-four-hour delay in sentencing after a motion for a post-verdict judgment of acquittal has been denied, this Court has applied the twenty-four-hour delay in Article 873 to motions for post-verdict judgment of

acquittal.  <u>State v. Johnson</u>, 11-375 (La. App. 5 Cir. 12/28/11), 83 So.3d 1116, 1124, <u>writ denied</u>, 12-296 (La. 6/22/12), 91 So.3d 966.

Absent a showing of prejudice, when a defendant does not waive the delay afforded in Article 873, and does not challenge the penalty imposed, the error may be harmless.  <u>State v. Wilson</u>, 99-105 (La. App. 5 Cir. 7/27/99), 742 So.2d 957, 959, <u>writ denied</u>, 99-2583 (La. 2/11/00), 754 So.2d 935.  Thus, absent a showing that prejudice resulted from the failure to afford the statutory delay, reversal of the prematurely imposed sentence is not required.  <u>State v. Seals</u>, 95-305 (La. 11/25/96), 684 So.2d 368, 380, <u>cert. denied</u>, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).

In <u>State v. Wilson</u>, 742 So.2d at 959-960, this Court considered the failure to observe the twenty-four-hour delay mandated by La. C.Cr.P. art. 873 in its error patent review.  While the defendant did not raise the trial judge's failure to observe the delay as error, he specifically challenged his sentence as excessive.  Because the trial court failed to rule on the defendant's timely motions for new trial and for post-verdict judgment of acquittal, this Court vacated the original sentences and remanded for ruling on the motions and for resentencing.  <u>Id.</u>  Thereafter, the defendant again appealed his sentences.  This Court evaluated the substance of his claim and concluded, under the unique circumstances of the <u>State v. Wilson</u> case, the failure to waive the delay was harmless.  This Court further stated that because the case was remanded for the specific purpose of resentencing, the defendant did not object at resentencing, and the trial judge already reconsidered the defendant's sentences at the hearing on the motion for reconsideration of sentence, remand would be "a useless formality."  <u>Id.</u>

Although it may appear that the delay between ruling on the motion and sentencing was not expressly waived, we find, like in <u>State v. Wilson</u>, that in these circumstances, the failure to adhere to it was harmless and that no corrective action

is necessary. At resentencing, the trial court denied defendant's motion, to which defense counsel asked the court to note the defense's objection, which the court did. The State asked the court to consider the prior victim impact statement, stated they had no additional victim impact statements, and asked the court to resentence the defendant. Defendant remained silent during the brief exchange between the State and the court. Immediately thereafter, the court resentenced defendant.

Here, as in State v. Wilson, defendant challenges his sentences as excessive and does not raise the failure to observe the delay as error. In addition, the instant case was previously remanded for resentencing, and defendant did not object at resentencing to the trial court's immediate sentencing. Further, the trial judge acknowledged defendant's motion to reconsider sentence and denied it. Therefore, we conclude that any error as to the delay was harmless.

**Decree**

For the reasons that follow, we affirm defendant's conviction and sentence for obstruction of justice and vacate defendant's conviction and sentence for second degree murder and remand the matter to the trial court for further proceedings.

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**SEPTEMBER 22, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**19-KA-601**

## E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
ANNE M. WALLIS (APPELLEE)         THOMAS J. BUTLER (APPELLEE)         JANE L. BEEBE (APPELLANT)
GRANT L. WILLIS (APPELLEE)

## MAILED
HONORABLE JEFFREY M. LANDRY
(APPELLEE)
ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH 3RD STREET
6TH FLOOR, LIVINGSTON BUILDING
BATON ROUGE, LA 70802

HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
KELLIE M. RISH (APPELLEE)
RICHARD L. OLIVIER (APPELLEE)
ASSISTANT DISTRICT ATTORNEYS
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053