OPINION OF THE COURT
Harold B. Beeler, J.
The People move by order to show cause for a hearing to determine whether this respondent should be found guilty of criminal contempt pursuant to Judiciary Law § 750 (A) (3) in connection with the placement of advertisements in contravention of an order filed by this court on September 22, 1999, prohibiting all parties from making extrajudicial statements regarding the subject matter of the criminal solicitation charges then being tried in the Supreme Court of New York County. Respondent submits two affirmations in opposition which seek various types of relief, including dismissal of the contempt charges; or in the alternative a full evidentiary hearing before a jury; and/or a full evidentiary hearing before another Judge; and a lifting of the so-called “gag order” which gave rise to these contempt charges. Upon the papers submitted and all prior papers and proceedings this court makes the following findings and conclusions of law.
Respondent’s application to dismiss the contempt charges against him on the ground that the order itself was an illegal infringement upon his First Amendment right of free speech is denied. (Matter of Oliver v Postel, 30 NY2d 171 [1972]; Matter of New York Times Co. v Demakos, 137 AD2d 247 [2d Dept 1988].)
As to the nature of this contempt proceeding, this court concurs with both parties that the alleged contemptuous conduct is criminal in nature, and did not require summary adjudication. Accordingly, pursuant to 22 NYCRR 604.2 (b) the contempt should be adjudicated: “at a plenary hearing with due process of law including notice, written charges, assistance *121 of counsel, compulsory process for production of evidence and an opportunity of the accused to confront witnesses against him.”
Respondent’s further contention that he is constitutionally entitled to a trial by jury finds no support in the courts or the Legislature of New York. The Sixth Amendment guarantee of a trial by jury applies only to serious offenses and does not extend to petty crimes or offenses. (Duncan v Louisiana, 391 US 145 [1968].) To determine whether an offense is serious or petty, the courts look to the judgment of the Legislature, as expressed in the maximum authorized term of imprisonment. (Lewis v United States, 518 US 322 [1996]; Matter of Morgenthau v Erlbaum, 59 NY2d 143 [1983].) Crimes carrying a sentence of greater than six months are serious; and those carrying a sentence of six months or less are petty crimes. (Frank v United States, 395 US 147 [1969]; Baldwin v New York, 399 US 66 [1970]; People v Foy, 88 NY2d 742 [1996].) The criminal contempt offenses charged here, each of which carries a maximum sentence of imprisonment of no more than 30 days and a fine of $1,000, are petty offenses under the applicable criteria. (Judiciary Law § 751 [1].)
Respondent contends that notwithstanding this fixed dividing line between petty and serious offenses, he is entitled to a jury trial because he faces a potential aggregate sentence of greater than six months. This argument too has been considered and dispositively rejected by the Court of Appeals in People v Foy (88 NY2d 742 [1996], supra) and by the Supreme Court in Lewis v United States (518 US 322 [1996], supra).
Respondent next argues that under the reasoning of Codispoti v Pennsylvania (418 US 506 [1974]), contempt is by its nature a serious charge which requires a jury trial, regardless of the penalty involved. This exact argument was rejected by the Supreme Court in Bloom v Illinois (391 US 194 [1968]), and then again in Lewis v United States (518 US 322 [1996], supra). In Lewis (at 328), the Court clarified the basis for its ruling in Codispoti, stating: “The Court was unable to determine the legislature’s judgment of the character of that offense * * * because the legislature had not set a specific penalty for criminal contempt. In such a situation, where the legislature has not specified a maximum penalty, courts use the severity of the penalty actually imposed as the measure of the character of the particular offense.” In light of this clarification, the Codispoti analysis is clearly inapplicable to a contempt charge under the New York statute which specifies a 30-day maximum authorized sentence.
*122 Respondent’s final argument, unaccompanied by any legal authority, is that he is entitled to a jury trial because this contempt proceeding involves the regulation of his First Amendment right of free speech. This argument harkens back to the subjective analysis which has been definitively rejected by the United States Supreme Court and the Court of Appeals, both of which evaluate the seriousness of a crime solely on the basis of the extent of the punishment authorized. (Matter of Morgenthau v Erlbaum, 59 NY2d 143, supra, cert denied 464 US 993 [1983]; Frank v United States, 395 US 147 [1969], supra.) Accordingly, defendant’s application for a jury trial is denied.
Respondent’s third application is for this court to recuse itself from presiding over the contempt proceeding. 22 NYCRR 604.2 (d) sets out the New York rule in the Appellate Division, First Department, regarding disqualification of Judges in the context of contempt proceedings. It provides:
“The judge before whom the alleged contumacious conduct occurred is disqualified from presiding at the plenary hearing or trial (as distinguished from summary action) except with the defendant’s consent:
“(1) if the allegedly contumacious conduct consists primarily of personal disrespect to or vituperative criticism of the judge; or
“(2) if the judge’s recollection of, or testimony concerning the conduct allegedly constituting contempt is necessary for an adjudication; or
“(3) if the judge concludes that in view of his recollection of the events he would be unable to make his decision solely on the basis of the evidence at the hearing.”
Respondent makes no specific reference to any of these paragraphs, but his argument appears to be predicated upon the paragraph which requires disqualification following personal attacks on the Judge. Respondent quotes extensively from cases, like Codispoti v Pennsylvania (418 US 506 [1974], supra), which represent the most extreme examples of ongoing battles between abusive litigants and the Judge. In Codispoti, the record is replete with incidents in which the pro se defendants insulted, threatened and attacked the integrity of the Judge and the proceedings.
Citing language from Taylor v Hayes (418 US 488, 501 [1974]), respondent suggests that a Judge, even if not personally attacked, may become so “embroiled in * * * controversy” that he should recuse himself not on the basis of actual bias, *123 but upon the “ ‘likelihood of bias.’ ” In Taylor, however, while not nearly as outrageous as Codispoti (supra), the record discloses repeated contumacious conduct in the presence of the court, and evidence of the Judge’s increasingly “unfavorable personal attitude toward petitioner.” (Taylor v Hayes, at 501.)
The Code of Judicial Conduct requires a Judge to “Avoid Impropriety and the Appearance of Impropriety” (Canon 2); and to “disqualify himself * * * [when] his impartiality might reasonably be questioned” (Canon 3 [C] [1]). Respondent, however, seems to propose an even more sweeping rule in that he seeks this court’s disqualification without specifying a single example from the record of the kinds of insults or controversy referred to in the cited authority or any factual basis whatsoever. Under respondent’s approach, it would appear that any contempt not dealt with summarily, would, of necessity, have to be referred to another Justice to be heard.
After serious consideration of the arguments of both parties, I find no legal or ethical basis for disqualification. Respondent is charged with eight separate contempts committed outside the presence of this court, in that he is alleged to have placed advertisements in various newspapers in violation of this court’s September 22, 1999 written order. There is no allegation of insulting or disrespectful conduct aimed at the court. Indeed, respondent fails to cite a single instance from the lengthy record of this trial which suggests any bias or partiality on the part of this court. Similarly, since the alleged contempt occurred outside of the court’s presence, the court is not a witness to the conduct. Lastly, there is nothing that occurred during the trial which would in any way interfere with the court’s ability to impartially review the evidence at a hearing.
This court concurs with the analysis of the Court in Ungar v Sarafite (376 US 575 [1964]). A constitutional rule which disqualifies a Judge solely based upon criticism of rulings and disobedience to court orders during a trial is excessive and unwarranted. It should not be assumed “that judges are so irascible and sensitive that they cannot fairly and impartially deal with resistance to their authority or with highly charged arguments about the soundness of their decisions.” (Supra, at 584.) Accordingly, this court, in its discretion, declines to recuse itself from presiding over the contempt hearing.
Respondent’s final application concerns the lifting of the so-called gag order. Since the order was designed to prevent extrajudicial communication with the jury during the pendency *124 of the solicitation trial, and it is not clear when those charges will be retried, the court sees no reason to extend the order. Although it is this court’s expectation that the contempt hearing will be scheduled for the near future, the court’s ruling that defendant is not entitled to a jury trial makes it unnecessary to continue the gag order with respect to that matter. Accordingly, the court’s September 22, 1999 order is lifted in its entirety.