**Frankie Robin SLIGER**

**v.**

**Darrell Dwayne SLIGER.**

Court of Appeals of Tennessee,
at Knoxville.

April 4, 2005 Session.

June 16, 2005.

Permission to Appeal Denied by
Supreme Court Nov. 21, 2005.

James H. Hickman, III, Knoxville, Tennessee, for the appellant, Darrell Dwayne Sliger.

John A. Hoag, Knoxville, Tennessee, for the appellee, Frankie Robin Sliger.

## OPINION

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Frankie Robin Sliger obtained her first order of protection against the defendant—her then-husband, Darrell Dwayne Sliger—on September 23, 1997. Six years later, and following the entry and extension of a series of such orders, the defendant was convicted in the instant case of 21 violations of the present order of protection. The trial court sentenced him to serve 10 days in jail for each violation; it also reinstated an additional 310 days of incarceration for 31 earlier violations. Enforcement of the additional 310 days of incarceration had been stayed so long as the defendant continued "good behavior." The defendant appeals, arguing that the trial court (1) abused its discretion in denying his request for a continuance; (2) erred in failing to grant him a jury trial; and (3) erred in failing to hold that his conduct resulted in only two rather than 21 violations. We affirm.

### I.

This case has a lengthy procedural history, dating back to the initial order of protection secured by Ms. Sliger in 1997. That order was based upon her petition, in which she alleged that the defendant had threatened to kill her and had injured her. Numerous orders of protection and extensions of such orders followed over the next

few years. In March, 2000, Ms. Sliger and the defendant were divorced.

On August 15, 2002, the trial court entered an order of protection without social contact, prohibiting the defendant from having any contact with Ms. Sliger. The order stated that if the defendant were to be found in violation of the order, he could be held in contempt and "punished by incarceration in the Knox County Jail for [a] maximum of ten days (10) . . ., for each violation." On the day the order was entered, Ms. Sliger filed a motion asking that the defendant be directed to show cause why he should not be held in contempt for violating the order of protection. On November 7, 2002, the trial court conducted a hearing on Ms. Sliger's motion. At the hearing, the defendant acknowledged that "while he was incarcerated, he mailed 31 sets of correspondence addressed to the parties' son . . . knowing that '[Ms. Sliger] would read them first.' " The trial court found that the defendant was guilty of criminal contempt in that he had committed 31 *separate* violations of the order of protection. The court sentenced the defendant to 310 days in the county jail, but stayed the execution of the sentence "pending continued good behavior and obedience by [the defendant] to the non-contact order with [Ms. Sliger] or [the parties' son]."

On July 10, 2003, Ms. Sliger filed another motion for an order to show cause, alleging that the defendant had again committed numerous violations of the order of protection. The court scheduled a hearing on the motion for October 16, 2003. According to the statement of the evidence, the defendant terminated the services of his attorney "prior to the hearing," though it is unclear as to exactly when this occurred. New counsel was appointed to represent the defendant at the hearing "upon a few minutes notice." The defen-

dant's new attorney requested a continuance, which request was denied by the trial court.

In its order finding the defendant to be in contempt of court, the trial court made the following findings:

That the [defendant] received actual notice of the proceeding; that the [defendant] had an opportunity to participate in the proceeding, and did, being represented by counsel. The court examined—and Mr. Brown (present counsel) also examined prior counsel as to trial preparation by defendant and his prior counsel. The court is well satisfied that defendant has received able assistance of counsel.

\* \* \*

Today's case began with allegations that the Order of Protection had been violated. The court finds today that the [defendant] called on 6/15/03 repeatedly, and once on 6/16/03, threatening graphic bodily mutilation to [Ms. Sliger], to her mother, to his son, to all members of the family. He has placed them all in fear, including [Ms. Sliger's new] husband. [The defendant] will "cut legs off", will "cut heads off." His son is unable to sleep due to anxiety.

\* \* \*

Additionally, the 310 days [of] incarceration suspended by the order of 11–7–2002 are now imposed and shall be served in their entirety.

The court finds one additional violation on 6/16/03 in the phone call, and one additional on 6/16/03, to wit, the placing-in-fear.

The court finds, as to 6/15/03, "repeated" phone calls on that day, 18 times at ten-minute intervals, with enough intervening time to allow reflection. Hence each instance constitutes a separately ma-

tured offense. As to the 18 instances the court aggregates them all into one instance of placing-in-fear. The 19 instances lead to 190 additional days [of] incarceration, for a total of 520 days to be served in their entirety.

The defendant subsequently filed a motion for reconsideration and rehearing, which motion was denied. From this order, the defendant appeals.

## II.

■ Our review of this non-jury case is *de novo* upon the record of the proceedings below with a presumption of correctness as to the trial court's factual findings, "unless the preponderance of the evidence is otherwise." Tenn. R.App. P. 13(d). The trial court's conclusions of law are not accorded the same deference. *Brumit v. Brumit,* 948 S.W.2d 739, 740 (Tenn.Ct. App.1997).

## III.

### A.

The defendant raises three issues on appeal:

(1) Did the trial court abuse its discretion when it denied the defendant's request for a continuance prior to the October 16, 2003, hearing?

(2) Did the trial court err in failing to grant the defendant a jury trial?

(3) Did the trial court err in failing to find only two violations as a result of the defendants' conduct on June 15 and 16, 2003?

### B.

The defendant first contends that the trial court abused its discretion in denying his request for a continuance just prior to the October 16, 2003, hearing. We disagree.

■ With respect to the denial of a motion for continuance, "[a]n appellate court cannot interfere with the trial court's decision unless such decision constitutes an abuse of discretion and causes prejudice to the party seeking the stay or continuance." *Sanjines v. Ortwein & Assocs., P.C.,* 984 S.W.2d 907, 909 (Tenn.1998) (citation omitted). The record in the instant case reflects that, just before the start of the October 16, 2003, hearing, the defendant requested a continuance based upon the appointment of new counsel who was unfamiliar with the case. While the statement of the evidence reflects that the defendant had terminated the services of his former attorney "prior to the hearing," there is no indication anywhere in the record as to *when* this termination occurred, be it minutes, hours, days, or weeks prior to the hearing.

The trial court, in its order finding the defendant in contempt, noted that the defendant had notice of the contempt proceeding; that he participated in the proceeding; and that he was represented by counsel. The court noted that the court, as well as the defendant's new counsel, examined the defendant's prior counsel "as to trial preparation by defendant and his prior counsel." Thereupon, the court concluded that it was "well satisfied that defendant ha[d] received able assistance of counsel."

■ Taking all of this evidence together, particularly the failure of the record to state exactly when the defendant's previous counsel was terminated and why he was terminated, we cannot say that the trial court abused its discretion when it denied the defendant's request for a continuance. Furthermore, the sparse record before us fails to show affirmatively that the defendant was prejudiced, in terms of his ability to defend, by the denial of the

continuance. Accordingly, we find this issue adverse to the defendant.

## C.

Next, the defendant argues that the trial court erred in failing to grant him a jury trial on these criminal contempt charges. The defendant seems to premise his argument on the theory that, because he was, prior to the hearing, potentially subject to an *aggregate* sentence of more than six months, he was entitled to a jury trial.

While the defendant did not request a jury trial, he contends that the trial court did not advise him he was entitled to a jury. He states that he never waived his right to trial by jury. We will proceed immediately to the issue of whether the defendant was entitled to a jury trial with respect to the charges pending against him.

In support of his argument, the defendant relies upon the United States Supreme Court case of *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). In *Codispoti,* the defendants, whose request for a jury trial was denied, were each sentenced to serve a term of six months in jail for each of several criminal contempt charges, with the sentences to run consecutively. *Id.* at 507–10, 94 S.Ct. 2687. *All of the criminal contempt convictions arose out of the defendants' contemptuous conduct during their trial, which included direct threats and insults to the trial judge. Id.* The trial court held that the defendants were not entitled to a jury trial because, *inter alia,* "no term of imprisonment in excess of six months was imposed for any one offense" and "[t]he offenses for which sentences were imposed occurred at different times and on different dates." *Id.* at 510, 94 S.Ct. 2687. The defendants appealed their convictions, asserting that the trial court erred in denying their request for a jury. *Id.* at 511, 94 S.Ct. 2687. The Pennsylvania Supreme Court affirmed the trial court's decision, *id.,* but the United States Supreme Court reversed, holding that, because each defendant was sentenced to "several times more" than six months in jail, each defendant "was tried for what was equivalent to a serious offense and was entitled to a jury trial." *Id.* at 517, 94 S.Ct. 2687.

Over twenty years later, the United States Supreme Court distinguished the *Codispoti* case in *Lewis v. United States,* 518 U.S. 322, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996). The defendant in *Lewis,* an employee of the United States Postal Service, was charged with two counts of mail obstruction, with each count carrying a maximum prison sentence of six months. *Id.* at 324, 116 S.Ct. 2163. The trial court denied the defendant's request for a jury trial, essentially promising the defendant that the court would not sentence him to more than a total of six months' imprisonment and that, as a consequence of the court's self-imposed limitation, he was not entitled to a jury trial. *Id.* The defendant appealed the trial court's denial of his jury demand, and the Supreme Court granted certiorari, prior to a trial on the charges, to determine whether, *inter alia,* "a defendant prosecuted in a single proceeding for multiple petty offenses has a constitutional right to a jury trial, where the aggregate sentence authorized for the offenses exceeds six months' imprisonment." *Id.* at 324–25, 116 S.Ct. 2163.

The Court began by noting that the Sixth Amendment guarantee to trial by jury extends to "serious offenses, and that 'there is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision.'" *Id.* at 325, 116 S.Ct. 2163 (quoting *Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 1453, 20 L.Ed.2d 491 (1968)). The

Court then stated that "[a]n offense carrying a maximum prison term of six months or less is presumed petty, unless the legislature has authorized additional statutory penalties so severe as to indicate that the legislature considered the offense serious." *Id.* at 326, 116 S.Ct. 2163 (citing *Blanton v. N. Las Vegas,* 489 U.S. 538, 543, 109 S.Ct. 1289, 1293, 103 L.Ed.2d 550 (1989); *Codispoti,* 418 U.S. at 512, 94 S.Ct. 2687). While the six-month penalty for obstruction of mail clearly made it a petty offense, the Court was still faced with the question of whether the defendant was entitled to a jury trial since the potential aggregated penalty for the two counts was twelve months. *Id.* In deciding this issue, the Court focused upon the maximum penalty authorized for *one* offense, rather than the aggregate of the sentences faced by the defendant. "Here, the penalty authorized by Congress manifests its judgment that the offense is petty, and the term of imprisonment faced by petitioner by virtue of the second count does not alter that fact." *Id.* at 328, 116 S.Ct. 2163.

In addressing the defendant's argument that *Codispoti* stands for the proposition that convictions for multiple petty offenses can cause the offenses to be considered serious for the purpose of the jury trial issue, the Court distinguished *Codispoti* as follows:

> *Codispoti* is inapposite. There, defendants were each convicted at a single, nonjury trial for several charges of criminal contempt. The Court was unable to determine the legislature's judgment of the character of that offense, however, because the legislature had not set a specific penalty for criminal contempt. In such a situation, where the legislature has not specified a maximum penalty, courts use the severity of the penalty actually imposed as the measure of the character of the particular offense. *Codispoti, supra,* at 511, 94 S.Ct. at 2690;

*Frank [v. United States], supra,* [395 U.S. 147,] 149, 89 S.Ct. [1503,] 1505[, 23 L.Ed.2d 162 (1969)]. Here, in contrast, we need not look to the punishment actually imposed, because we are able to discern Congress' judgment of the character of the offense.

Furthermore, *Codispoti* emphasized the special concerns raised by the criminal contempt context. Contempt "often strikes at the most vulnerable and human qualities of a judge's temperament. Even where the contempt is not a direct insult to the court ... it frequently represents a rejection of judicial authority, or an interference with the judicial process...." *Codispoti,* 418 U.S. at 516, 94 S.Ct. at 2693 (internal quotation marks omitted); see also *Mayberry v. Pennsylvania,* 400 U.S. 455, 465–466, 91 S.Ct. 499, 504–505, 27 L.Ed.2d 532 (1971). In the face of courtroom disruption, a judge may have difficulty maintaining the detachment necessary for fair adjudication; at the same time, it is a judge who "determines which and how many acts of contempt the citation will cover," "determine[s] guilt or innocence absent a jury," and "impose[s] the sentence." *Codispoti,* 418 U.S. at 515, 94 S.Ct. at 2693. Therefore, *Codispoti* concluded that the concentration of power in the judge in the often heated contempt context presented the "very likelihood of arbitrary action that the requirement of jury trial was intended to avoid or alleviate." *Ibid.* The benefit of a jury trial, " 'as a protection against the arbitrary exercise of official power,' " was deemed particularly important in that context. *Id.,* at 516, 94 S.Ct. at 2693 (quoting *Bloom v. Illinois,* 391 U.S. 194, 202, 88 S.Ct. 1477, 1482, 20 L.Ed.2d 522 (1968)).

The absence of a legislative judgment about the offense's seriousness, coupled with the unique concerns presented in a

criminal contempt case, persuaded us in *Codispoti* that, in those circumstances, the jury trial right should be determined by the aggregate penalties actually imposed. Codispoti was held to be entitled to a jury trial, because the sentence actually imposed on him for criminal contempt exceeded six months. By comparison, in *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), which similarly involved a defendant convicted of criminal contempt in a jurisdiction where the legislature had not specified a penalty, we determined that the defendant was not entitled to a jury trial, because the sentence actually imposed for criminal contempt did not exceed six months. *Contrary to Justice KENNEDY's argument, ..., Codispoti and Taylor do not stand for the sweeping proposition that, outside their narrow context, the jury trial right is determined by the aggregate penalties faced by a defendant.*

Certainly the aggregate potential penalty faced by petitioner is of serious importance to him. *But to determine whether an offense is serious for Sixth Amendment purposes, we look to the legislature's judgment, as evidenced by the maximum penalty authorized. Where the offenses charged are petty, and the deprivation of liberty exceeds six months only as a result of the aggregation of charges, the jury trial right does not apply ....*

The Constitution's guarantee of the right to a jury trial extends only to serious offenses, and petitioner was not charged with a serious offense. That he was tried for two counts of a petty offense, and therefore faced an aggregate potential term of imprisonment of more than six months, does not change the fact that the Legislature deemed this offense petty. Petitioner is not entitled to a jury trial.

*Id.* at 328–30, 116 S.Ct. 2163 (emphasis added).

■ In discussing criminal contempt, the United States Supreme Court emphasized that a judge might have difficulty remaining impartial "[i]n the face of courtroom disruption" and in the "*often* heated contempt context." *Id.* at 329, 116 S.Ct. 2163 (emphasis added). In addition, the Court stated that *Codispoti* and *Taylor*, "*outside their narrow context*," do not stand for the "sweeping proposition that ... the jury trial right is determined by the aggregate penalties faced by a defendant." *Id.* (emphasis added). We find nothing in *Codispoti*—either expressly or by implication—which states that *all* criminal contempt cases involving potential aggregate sentences in excess of six months are so unique as to give rise to the right to a jury trial in all such cases. *Lewis* rather than *Codispoti* controls the facts of the case at bar. It is clear beyond any doubt that our legislature has deemed criminal contempt to be a petty offense, as it is punishable by only ten days in jail and a $50 fine. *See* Tenn.Code Ann. § 29–9–103 (2000). Moreover, the criminal contempt charges involved in the instant case all relate to the defendant's violations of an order of protection, whereas in *Codispoti*, the charges all pertained to *direct insults or threats to the court.* Our reading of *Codispoti* and *Lewis* convinces us that the latter conduct in *Codispoti* is what distinguishes that case from *Lewis* and the facts of the instant case. Accordingly, following *Lewis*, we hold that the defendant in the instant case was not entitled to a jury trial. *See also Perkerson v. Perkerson*, No. 01A01–9602–CV–00059, 1996 WL 426807, at *3 (Tenn.Ct.App. M.S., filed July 31, 1996) (holding that "the violation of a court order, punishable by a fifty dollar fine and/or ten days in jail under Tenn.Code

Ann. § 29–9–103," does not entitle the accused to a jury trial).

### D.

Finally, the defendant asserts that the trial court erred in failing to hold that the defendant's conduct on June 15 and 16, 2003, resulted in only two violations of the order of protection. Specifically, the defendant contends that the 18 telephone calls at ten-minute intervals on June 15, 2003, along with the placing-in-fear charge on that same date, and the one phone call on June 16, 2003, along with the additional placing-in-fear charge on the 16th, should have been counted as only two violations instead of 21 separate violations.[1] The defendant argues that his multiple telephone calls "clearly indicate[ ] that [his] intent was a singular intent and involved a singular contempt of the previous order of protection." We disagree.

The seminal case on this subject is *Cable v. Clemmons*, 36 S.W.3d 39 (Tenn.2001). In *Cable*, the defendant was convicted of six counts of criminal contempt for threatening and abusing his girlfriend in violation of an order of protection. *Id.* at 40–41. The Tennessee Supreme Court found that the evidence supported only three contempt convictions, but, in so finding, the Court discussed the analysis to be utilized in deciding whether multiple convictions constitute punishment for the same offense:

> The courts must consider 1) the statutory elements of the offenses, …; 2) the evidence used to establish the offenses, …; 3) whether the defendant's conduct involved multiple victims or discrete acts; and 4) whether the purpose of the

respective statutes at issue is the same or different.

*Id.* at 42 (citing *State v. Denton*, 938 S.W.2d 373, 381 (Tenn.1996)). The Court went on to note that no single factor is controlling and that each must be "weighed and considered in relation to the others." *Id.* (citation omitted).

Applying these factors to the instant case, we begin by noting that there is only one statute involved, *i.e.*, Tenn.Code Ann. § 29–9–103, as each conviction is for criminal contempt. With respect to the evidence used to establish the offenses, the trial court found that the defendant, in his multiple telephone calls, threatened "graphic bodily mutilation" to Ms. Sliger, to the parties' son, and to all members of Ms. Sliger's family. The court also found that the defendant had placed the entire family in fear with his threats to "cut legs off" and "cut heads off." Finally, the trial court found that the parties' son "is unable to sleep due to anxiety." As to whether the defendant's conduct involved discrete acts, there is no question that the trial court found each telephone call to be a separate and distinct act, as the calls on the 15th were made at ten-minute intervals "with enough intervening time to allow reflection" and that each call thus constituted "a separately matured offense."

We find no error in the trial court's holdings. The time that elapsed between telephone calls on the 15th is clearly enough to constitute 18 separate acts, and thus, 18 separate violations; there is no way these telephone calls can be construed as one continuing course of conduct. On each occasion, a call was completed and terminated; there was a period of time for

---

1. The defendant does not specifically raise as an issue the propriety of treating a telephone call or calls on a specific day as both a violation of the "no contact" provision of the order

of protection and "the placing in fear" provision of the same order. Since this issue was not raised, we do not address it.

reflection; and a new call was then initiated.

The defendant relies on the case of *State v. Wood,* 91 S.W.3d 769, 776 (Tenn. Ct.App.2002), for the proposition that "the sentence [should] be the least severe measure necessary to achieve the purpose for which the sentence is imposed." The defendant advances the theory that, like the defendant in *Wood,* incarceration for well over a year is not the least severe measure necessary to punish him for his conduct. However, in *Wood,* the court pointed out that there were no allegations of the defendant engaging in violent or threatening behavior. *Id.* at 777. In the instant case, the evidence is quite to the contrary: the defendant repeatedly—and graphically—threatened violence against Ms. Sliger and her family. Moreover, the defendant was given the opportunity to avoid the stayed sentence of 310 days. This sentence was stayed "pending continued good behavior and obedience" to the order of protection. Instead, the defendant, less than eight months later, continued his pattern of disregarding the order of protection and made multiple threatening telephone calls to Ms. Sliger. In light of his continued and utter disregard for the order of protection, we find that the defendant's sentence is necessary "to achieve the purpose for which the sentence [was] imposed." *Id.* at 776.

### IV.

The judgment of the trial court is affirmed. This case is remanded to the court below for the collection of costs assessed there and for the enforcement of that court's judgment. Costs on appeal are taxed to the appellant, Darrell Dwayne Sliger.