IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs, January 11, 2011

**APRIL AMANDA WORLEY, v. RICHARD THOMAS WHITAKER**

**Appeal from the Circuit Court for Knox County**
**No. 113375 & 116115      Hon. Bill Swann, Judge**

**No. E2010-00153-COA-R3-CV - Filed March 31, 2011**

Plaintiff sought and obtained an Order of Protection from the Trial Court against defendant, Subsequently, following an evidentiary hearing, the Court found defendant in contempt of the Order of Protection, and sentenced him to 1830 days in prison.  Defendant has appealed to this Court *inter alia*, seeking a reduction in the sentence.   We affirm the Judgment of the Trial Court, but modify by reducing his sentence to 730 days.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Zachariah N. Stansell, Knoxville Tennessee, for the appellant, Richard Thomas Whitaker.

Thomas F. diLustro, Knoxville, Tennessee, for the appellee, April Amanda Worley.

**OPINION**

Plaintiff filed a petition seeking an ex parte Order of Protection against Richard Thomas Whitaker, alleging that the two had a daughter together but had never been married, and that Whitaker had grabbed her, choked her, threatened her, stalked her, etc. Plaintiff alleged that Whitaker used drugs and alcohol, and that he would drive in front of her home,

call and leave messages, and texted her frequently. An ex parte Order of Protection was entered on March 10, 2009, and on March 26, 2009, plaintiff filed a Motion for an Order to Show Cause and/or Writ of Attachment, alleging that Whitaker was in contempt because when they came to court to have the hearing, Whitaker followed her, jumped in her car, threatened her, etc.

Counsel was appointed to represent Whitaker, and an Order of Protection was entered on April 30, 2009. The order states that the parties agreed to the same, but with social contact. The Order goes on to state that the parties were advised against social contact, but the parties agreed they could have social contact and be in each other's presence, but that this was "wholly against the wisdom of the Court." It also states that the issue of Whitaker's alleged violation of the ex parte Order is reserved, and would be dismissed after one year if he strictly complied with the Order of Protection. Further, the Court ordered the parties to begin legitimation and child support proceedings, and to attend a 12-hour parent education seminar. Plaintiff was ordered to attend weekly meetings of a domestic violence support group, and Whitaker was ordered to get a substance abuse assessment, to complete an intervention program for violence and control issues, and to attend 45 weekly meetings of the Domestic Violence Intervention Group for men.

Subsequently, plaintiff filed a Motion to Amend Order of Protection to change the Order of Protection to a no-contact order, because Whitaker forced his way into her apartment after smoking crack, called her names, threatened her, and that she feared for her safety. She filed yet another Motion a few days later, stating that Whitaker had walked into her apartment uninvited and that on the night her apartment was broken into, Whitaker texted her one hour before asking if she was home.

Plaintiff alleged that Whitaker had broken into her apartment, and had stolen her clothing, underwear, shoes, camera, cd's, legal documents, and her notebook where she was keeping notes of the case, and that he had been to her workplace and had called her repeatedly. Plaintiff stated that she had also had three tires on her car slashed, her fuel line was cut, a rock was thrown through the back window of her car, and her license plate had been stolen.

The Court issued a Writ of Attachment for Whitaker for criminal contempt, and set bond. The Court issued an Order stating that all of the previous allegations regarding Whitaker's violations of the ex parte Order (which had been reserved in the Order of Protection) would be tried along with the current allegations in the Motions. Plaintiff filed a Statement and Clarification, and gave a timeline of the events contained in her motions, and also provided additional information on the burglary of her home, including that the perpetrator had left a dead rose and a condom wrapper on her pillow. She also filed an

extensive list of the phone calls made to her by Whitaker, and concluded that she feared for her life and the life of her daughter.

Following the hearing, the Court issued a Mittimus to Jail after Hearing, finding Whitaker in willful contempt of court on 183 counts, and ordered that he be placed in custody for 1830 days, with no eligibility for "good time" credit or work release program.

Whitaker has appealed. While the record contains a transcript of the Court's memorandum opinion, wherein the Court stated that it heard testimony from the parties and from Officer Gentry of the Knoxville Police Department, the Court found beyond a reasonable doubt that Whitaker had burglarized plaintiff's apartment and damaged her car, and found that the evidence proved that he committed the burglary because he took her clothing and intimate items, all the legal papers, the notes she was keeping in regard to his behavior, her camera, her birth certificate and the daughter's. Also he left a dead rose and condom wrapper on her pillow, and cut the crotch out of a pair of pants. The Court held the evidence was "absolutely damning and conclusive." Further, the Court found one count of contempt for the taking of plaintiff's shoes, two counts for destruction of property, one count for placing in fear, one count for stalking, and one count for threatening.

The Court found that Whitaker had known since August that plaintiff wished to have no contact from him, but he repeatedly called her. The Court noted that in the *Cable* case, it was held there had to be a period of reflection in between the acts of contempt for them to be considered separate counts, and the Court imposed a ten-minute period of reflection "as a courtesy to Mr. Whitaker" on the list of phone calls, such that certain calls within a ten-minute window were lumped together as one count. Thus, the Court found that when adding the phone calls to the above counts of contempt, there were a total of 183 counts. The Court then imposed a ten-day sentence for each, and sentenced Whitaker to 1830 days.

There was no transcript of the hearing or statement of the evidence filed, but appellant attempted to append a "Statement of Evidence" to his brief, but it was not filed with the Trial Court or approved by the Trial Court, and cannot be considered by this Court, pursuant to Tenn. R. App. P. 24.

Appellant raises these issues:

1.      Whether the Trial Court erred in granting the five year order of protection as to the minor child?

2.      Whether the Trial Court erred in considering the phone calls from before the motion to amend was served?

3.      Whether the Trial Court erred in sentencing the respondent for the alleged burglary charges?

4.      Whether the Trial Court erred in sentencing the respondent to 1830 days of incarceration?

The Trial Court sentenced Whitaker to 1830 days' incarceration, and then stated that Whitaker would be banned from coming around the minor child until he was released from incarceration and attended his 12 hour parenting class. The Court recognized that this was a "severe" order, but that it was necessary because Whitaker had terrorized the child's mother, and his conduct was unfit for the society of the child.

Whitaker argues the Trial Court erred in this ruling, because there was no testimony about his relationship with the child, or that he had abused or neglected the child. Whitaker's argument does not address the fact that petitioner had alleged in her pleadings that Whitaker was on drugs, that she found a crack pipe in his vehicle, that he once passed out for five hours while he was supposedly caring for this very young child, and that he once took her for a visit and refused to return her to the mother, causing petitioner to file charges against him for custodial interference.

This Court has often observed, in the absence of a transcript or a statement of the evidence, the Court must conclusively presume that "every fact admissible under the pleadings was found or should have been found favorably to the appellee." *Leek v. Powell*, 884 S.W.2d 118, 121 (Tenn. Ct. App.1994). Accordingly, we assume that all of petitioner's allegations regarding Whitaker's abuse of her, his neglect/abuse of the child, and his drug use were proven, and there was sufficient evidence to support the Trial Court's ruling on these issues. As the Trial Court noted, it is not only Whitaker's behavior toward the child that must be considered, but also his behavior toward the mother. This issue is without merit.

Whitaker next argues that it was error for the Trial Court to consider the phone calls that Whitaker made to petitioner before the Motion to Amend the Order of Protection was served, because the original Order of Protection allowed for social contact. Whitaker's argument fails to recognize that the Order of Protection that allowed social contact was still an Order of Protection, and prevented the defendant from threatening the petitioner, stalking the petitioner, or placing the petitioner in fear, as the Order of Protection expressly did. Petitioner alleged that she began to be in fear of Whitaker after they had a confrontation in August 2009, wherein he admitted he was using illicit drugs and she told him to stay away from her and her child, resulting in Whitaker "backhanding" petitioner across the face. All of the phone calls began to take place after this confrontation, and petitioner alleged some 300+ phone calls, some of which were threatening, and in addition, petitioner stated that

Whitaker sent her threatening text messages, burglarized her apartment, invaded her apartment when she was home, banged on her window, stalked her at work, and vandalized her car, etc.

When considering the totality of the circumstances, petitioner had reason to feel threatened by Whitaker and his consistent phone calls were a large part of that threatening behavior which placed her in fear. Clearly Whitaker's phone calls were in violation of the earlier Order of Protection, and went beyond the realm of normal social contact. The Trial Court did not err in considering the phone calls.

Whitaker argues that the Trial Court cannot sentence him for the burglary of petitioner's apartment and find separate counts of contempt for the destruction of her personal property, because these were not separate and distinct acts, and because he is being charged in criminal court for burglary for the same acts. He argues that double jeopardy prevents him from being punished twice for the same offense.

As the Trial Court mentioned, the seminal case on the contempt issue is *Cable v. Clemmons*, 36 S.W.3d 39 (Tenn. 2001), wherein the Supreme Court addressed the issue of whether double jeopardy bars multiple convictions of criminal contempt based on violations of an order of protection. The Supreme Court explained as follows:

> The double jeopardy clause in the United States Constitution provides that no person "shall ... be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const .Amend. V. Similarly, the Tennessee Constitution states that "no person shall, for the same offense, be twice put in jeopardy of life or limb." Tenn. Const. art. I, § 10.

> The constitutional right against double jeopardy protects against 1) a second prosecution after an acquittal; 2) a second prosecution after a conviction; and 3) multiple punishments for the same offense. *State v. Denton*, 938 S.W.2d 373, 378 (Tenn.1996); *see also Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 1435-36, 63 L.Ed.2d 715 (1980). The issue here concerns the third of these protections: that is, whether Clemmons' multiple convictions for contempt constitute punishment for the same offense under the facts of this case.

> In *State v. Denton*, we established the analytical framework for determining whether a defendant has received multiple punishments for the "same offense." The courts must consider 1) the statutory elements of the offenses, guided by the principles in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); 2) the evidence used to establish the offenses, guided by the principles in *Duchac v. State*,

505 S.W.2d 237 (Tenn.1973); 3) whether the defendant's conduct involved multiple victims or discrete acts; and 4) whether the purpose of the respective statutes at issue is the same or different. *Denton*, 938 S.W.2d at 381. No single aspect of this analysis is given controlling weight; each factor must be weighed and considered in relation to the others. *See State v. Beauregard*, 32 S.W.3d 681 (Tenn. 2000).

Applying the first factor of the *Denton* analysis - the statutory elements of the offenses - to this case, we observe that only one statute is involved because each conviction was for criminal contempt. Included in the statutory elements of the single contempt statute is the phrase "willful disobedience ... to [a] lawful ... [court] order." *See* Tenn.Code Ann. § 29-9-102(3) (1980). Accordingly, we also need not compare the purpose of the contempt statute with any other statute as is ordinarily required by the fourth *Denton* factor. In short, Clemmons' convictions do not involve multiple or distinct statutes.

With regard to the second *Denton* factor, however, we find that different evidence was used to establish three convictions for violating the order of protection. For example, evidence to establish the first conviction occurred when an argument began and Clemmons grabbed Cable and pushed her head against the car window. The evidence of the second conviction was that Clemmons produced a knife and threatened to kill Cable. Finally, the evidence of the third conviction was that after Cable pulled over and fled from the scene, Clemmons vandalized her car by kicking it and striking it with a knife.

With regard to the third *Denton* factor, we also conclude that although the offenses involved a single victim, they consisted of separate and distinct acts. As noted above in our analysis of the second *Denton* factor, Clemmons abused Cable physically; produced a knife and threatened to kill her; and then vandalized Cable's personal property. These acts constituted separate and distinct types of abuse, all of which were prohibited under the order of protection. *See* Tenn.Code Ann. §§ 36-3-601 and -606(a) (1996 & Supp.1999). The fact that the acts were closely related in time and place does not render them inseparable; indeed, emphasizing only time and place is tantamount to a "same transaction" analysis, which is not part of the *Denton* analysis.

We therefore conclude that double jeopardy principles do not bar multiple convictions and punishments in this case. The record, however, supports only three convictions and not six as found by the trial court. As we have discussed above, there were three distinct and separate acts committed by Clemmons-physically abusing Cable, threatening to kill her with a knife, and damaging her personal property-that violated the order of protection and supported a separate conviction for contempt. *See Black*

*v. Blount*, 938 S.W.2d 394 (Tenn. 1996) (evidence supported three contempt convictions); <u>State v. Turner</u>, 914 S.W.2d 951 (Tenn. Crim. App. 1995) (evidence supported three contempt convictions). In sum, we conclude that double jeopardy principles do not bar Clemmons' convictions for three counts of contempt under the facts of this case.

*Id.* at 42-43.

The Court explained in a footnote that, "this Court has repeatedly rejected the view that multiple offenses must be considered the same offense if occurring as part of the 'same transaction. This Court explained that '[i]f the same evidence is not required, then the fact that both charges relate to, and grow out of, one transaction, does not make a single offense where two are defined by the statutes.'" *Id.* at 42-43, f.n. 1 (citations omitted).

In this case, the taking of petitioner's personal property, the destruction of her clothing by cutting, the taking and destroying her camera card, and the placing of a dead rose/condom wrapper on her pillow were separate and distinct acts that constitute different types of abuse, all prohibited by the Order of Protection. The fact that they occurred close in time does not change the fact that they were distinct acts and that separate evidence was required for each violation. Thus, as the Trial Court found, these acts constituted separate violations of the Order of Protection under the *Cable* analysis.

Utilizing the analysis set forth in *Denton*, it is clear that the Trial Court did not err in considering the burglary allegations simply because there could be burglary charges pending in criminal court.[1] The criminal statues involving burglary and the statutes involving orders of protection and contempt are different statutes with different elements and different evidentiary standards. Moreover, their purposes are also quite different. Thus, the Trial Court's sentencing of Whitaker for the act of burglarizing petitioner's apartment as a violation of the Order of Protection does not run afoul of double jeopardy principles.

Finally, Whitaker argues the Trial Court erred in imposing a sentence of 1830 days for contempt. He concedes that the trial court can punish with a ten-day sentence for each count of contempt, but argues that this is not the "least severe measure necessary to achieve the purpose for which the sentence is imposed", and that he should at least be able to receive "good time" credits, participate in work release, etc.

Whitaker relies on the case of *State v. Wood*, 91 S.W.3d 769 (Tenn. Ct. App. 2002), for his argument that the sentence imposed of ten days per violation is too severe. In *Wood*,

---

[1] There is no proof in the record of pending charges in criminal court.

the husband had violated the Order of Protection numerous times by contacting the wife, but there were no allegations of violence or threatening behavior whatsoever. *Id.* This Court made it clear that criminal statutes regarding "good time" credits and similar sentence-reduction provisions did not apply in cases of criminal contempt. *Id.* The Court did, however, send the case back to the trial court for resentencing because there was not proof that the punishment was the "least severe measure necessary to achieve the purpose for which the sentence is imposed", given the lack of allegations of violence/threats. *Id.*

Another instructive case is that of *Sliger v. Sliger*, 181 S.W.3d 684 (Tenn. Ct. App. 2005), wherein the defendant repeatedly called his ex-wife in violation of an Order of Protection, and threatened violence to her and her family, placing her in great fear. The defendant was sentenced to ten days for every violation, for a total of 520 days, and he argued that this was too severe. This Court reviewed the sentence, stating:

> The defendant relies on the case of *State v. Wood*, 91 S.W.3d 769, 776 (Tenn.Ct.App.2002), for the proposition that "the sentence [should] be the least severe measure necessary to achieve the purpose for which the sentence is imposed." The defendant advances the theory that, like the defendant in *Wood*, incarceration for well over a year is not the least severe measure necessary to punish him for his conduct. However, in *Wood*, the court pointed out that there were no allegations of the defendant engaging in violent or threatening behavior. Id. at 777. In the instant case, the evidence is quite to the contrary: the defendant repeatedly-and graphically-threatened violence against Ms. Sliger and her family. Moreover, the defendant was given the opportunity to avoid the stayed sentence of 310 days. This sentence was stayed "pending continued good behavior and obedience" to the order of protection. Instead, the defendant, less than eight months later, continued his pattern of disregarding the order of protection and made multiple threatening telephone calls to Ms. Sliger. In light of his continued and utter disregard for the order of protection, we find that the defendant's sentence is necessary "to achieve the purpose for which the sentence [was] imposed." Id. at 776.

*Sliger v. Sliger*, 181 S.W.3d 684, 692 (Tenn. Ct. App. 2005).

Here, Whitaker's behavior occurred over a period of months and included multiple acts of violence toward petitioner, repeated threats to petitioner, stalking, multiple acts of destruction of her property, and also not returning the child from a visit. This behavior was in flagrant violation of the Order of Protection, and his behavior demonstrated an utter disregard for the Court's orders.

A Trial Judge's sentence for contempt must be reasonable and within the sound discretion of the Trial Court, *see* 17 CJS §117, Contempt. From our review of the record,

we conclude the Trial Judge abused his discretion in passing sentence on defendant, and the sentence imposed was unreasonable to achieve the purpose for which the sentence was imposed. *State v. Woods*. Accordingly, we conclude a reasonable sentence to achieve the purpose for which it was imposed would be 730 days. Accordingly, we modify the Trial Court's Judgment to that extent.

We affirm the Judgment of the Trial Court as modified, and remand, with the cost of the appeal assessed to Richard Thomas Whitaker.

_____
HERSCHEL PICKENS FRANKS, P.J.