STATE OF LOUISIANA

VERSUS

FREDERICK SEYMORE, JR.

NO. 20-KA-129

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 16,340, DIVISION "A"
HONORABLE MADELINE JASMINE, JUDGE PRESIDING

November 04, 2020

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg

**CONVICTION AND SENTENCE**
**VACATED; REMANDED**
    **HJL**
    **JGG**
    **RAC**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Bridget A. Dinvaut
 William R. Dieters

COUNSEL FOR DEFENDANT/APPELLANT,
FREDERICK SEYMORE, JR.
 Prentice L. White

**LILJEBERG, J.**

Defendant appeals his conviction and sentence for second degree murder, challenging the sufficiency of the evidence and arguing that the non-unanimous jury verdict was unconstitutional. Considering the holding of *Ramos v. Louisiana*, *infra*, we vacate defendant's conviction and sentence, and we remand to the trial court for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

On October 10, 2016, a St. John the Baptist Parish Grand Jury returned an indictment charging defendant, Frederick Seymore Jr., with the second degree murder of Tory Horton, in violation of La. R.S. 14:30.1. Defendant was arraigned and pleaded not guilty. Trial commenced before a twelve-person jury on June 24, 2019. On June 27, 2019, the jury returned a verdict of guilty as charged. The verdict was not unanimous. On January 6, 2020, the trial court sentenced defendant to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. Immediately after sentencing, defendant filed a motion for appeal, which the trial court granted.

At trial, Sergeant Joshua Gilboy of the St. John the Baptist Parish Sheriff's Office testified that on August 5, 2016, he was with Sergeant Michael Gill when they were called to the LaPlace Discount gas station and store ("LaPlace Discount") located at 820 Airline Highway in LaPlace, Louisiana, in reference to a shooting. When they arrived at the store, Sergeant Gilboy observed blood on the floor and saw the victim, later identified as Tory Horton, lying in the hallway near the manager's office. Sergeant Gilboy testified that Sergeant Gill performed CPR on the victim while he secured the scene. After members of the fire department arrived to assist with life-saving services, Sergeant Gilboy and Sergeant Gill began

searching for a "red sedan" in relation to the shooting while other officers canvassed the scene for witnesses.[1]

The victim was initially transported to River Parish Hospital, where it was decided that he would be transferred to University Hospital. During the ambulance transport to University Hospital, the victim had medical complications and died while returning to River Parish Hospital.[2] Tory was sixteen years old at the time of his death.

During the course of the investigation, officers were provided with two names, "Gator" and "Bruce," and they were able to locate Bruce Butler. At trial, Bruce Butler testified that he witnessed defendant shoot the victim on August 5, 2016, and he identified defendant in open court. He explained that he knew defendant from school, and they would "hang out" regularly. He confirmed that defendant's nickname was "Gator."

Mr. Butler testified that defendant picked him up in a red car on the day of the shooting. They went to Walgreens to conduct a drug exchange but relocated to LaPlace Discount to complete the transaction. After exiting the vehicle, Mr. Butler entered another car to finish the drug exchange and returned to the passenger seat of defendant's car. Mr. Butler stated that his window was rolled down because it was hot outside. He testified that "the little boy came up to the car" after defendant called him over. According to Mr. Butler, defendant reached across him and shot the victim, who was standing about three feet from the open, passenger window. Mr. Butler denied knowing that defendant had a gun or that he planned to shoot Tory.

---

[1] Surveillance video footage recovered from LaPlace Discount revealed a red vehicle pulling alongside the victim before he was shot.

[2] Dr. Samantha Huber, an expert in the field of forensic pathology, testified that she performed the autopsy of Tory. She testified that he died from a gunshot wound which entered the left chest, passed through ribs, bone, and lung, and exited through the right back.

Mr. Butler testified that defendant drove away from the scene after the shooting, and Mr. Butler exited the vehicle in front of Cambridge Drive because he had to go to work. Mr. Butler testified that he and defendant did not speak after the victim was shot. He went to his house after the shooting and the police arrived about five hours later. Mr. Butler admitted that he tried to leave his home when the police arrived. During the search of his home, bullets were found in his closet, but Mr. Butler testified they were not used on August 5, 2016. Mr. Butler responded that he "did not know" in response to questioning about why he showered and washed his hands, and "got rid of his clothing" before the police arrived.

Mr. Butler testified that he was arrested in connection with the victim's murder, but the charges against him were dismissed. He denied any promises were made in exchange for his testimony. Mr. Butler testified that he spoke with detectives several times after the shooting, and he admitted that he lied during questioning. Mr. Butler also admitted that he had prior criminal convictions.

Detective Brandon Barlow was the lead investigator in this case. He testified that he reviewed photographs taken at the scene and spoke with witnesses on the scene who indicated they did not observe the actual shooting. Detective Barlow testified that he reviewed the August 5, 2016 surveillance video footage obtained from LaPlace Discount. The detective noted the victim entering the scene around 3:30 p.m. on August 5, 2016, and he identified the individual as Tory Horton. He asserted that the video showed the victim entering and exiting the store and "hanging out" in the store's parking lot before the shooting. Detective Barlow described the victim walking away from the store and defendant's red vehicle, which was registered to defendant's mother, coming to a stop alongside him. He asserted that defendant's vehicle then accelerated from the parking lot and Tory started running toward the store. The detective saw Tory on the video in the front

area of the store with a "large collection of blood" on his T-shirt. Detective Barlow also confirmed that he saw Mr. Butler, wearing dark blue and white clothes, exiting defendant's vehicle in the footage. The detective stated that a search of Mr. Butler's residence on Cambridge Drive was conducted, and his clothing from that day was collected.

Detective Barlow testified that crime cameras set up throughout the parish captured defendant's vehicle's movements from earlier on August 5, 2016. The cameras revealed the vehicle traveling to the Walgreens parking lot but did not capture its relocation to LaPlace Discount. He explained that after the shooting, the vehicle took a right from the LaPlace Discount parking lot onto Cambridge Drive and traveled north. Based on this information, a "BOLO" was established for the vehicle and shared with the other departments within the area.[3] The vehicle was located by the Jefferson Parish Sheriff's Office after receiving a "suspicious vehicle call" at an apartment complex. Detective Barlow identified photographs taken of the vehicle at the apartment complex, and he stated that they obtained and executed a search warrant for the vehicle. No firearms or casings, proof of insurance, or registration were recovered from the vehicle; however, a tax form containing defendant's name was found in the car.

Detective Barlow further testified that the police obtained surveillance video footage from near the apartment complex, and he reviewed the footage. On the video, he observed the vehicle, a red Toyota Corolla, pull into the apartment complex's parking lot on August 5, 2016, at approximately 6:00 p.m. Detective Barlow testified that defendant exited the vehicle, turned to the driver's door, and wiped the area with his shirt. The detective noted a different black male in the video return to the vehicle later that night at approximately 7:40 p.m. and enter the driver-side door.

---

[3] Detective Barlow explained that a BOLO stands for "Be On The Lookout."

Detective Barlow testified that video footage from two days after the shooting, August 7, 2016, revealed that two individuals returned to the vehicle and removed several items, including the license plate. The individuals were later identified as defendant's cousins, Travis Stewart and Jarell Vanzant.

Detective Barlow testified that he obtained an arrest warrant for defendant, and he was located in Houston, Texas. He testified that he spoke with defendant after his arrest, and defendant gave a statement after he was advised of and waived his rights. The detective stated that defendant admitted he knew the victim's brother, Cory Horton. Defendant informed Detective Barlow that Cory, whom he knew as "Lil Co," had previously broken into his vehicle to steal narcotics but stole a book bag containing a PlayStation 4 instead. According to the detective, defendant indicated that he reported the incident to the police. Deputy Galen Joseph testified and confirmed that defendant reported a vehicle burglary on April 21, 2016, and defendant informed him that the perpetrator was "Lil Co."

Detective Barlow explained that during his statement, defendant mentioned picking up Mr. Butler from his residence on August 5, 2016. He stated that he brought Mr. Butler to Walgreens to complete a drug transaction and then they relocated to LaPlace Discount. Defendant indicated that Mr. Butler entered the store to purchase cigars, which the surveillance video footage did not support. Defendant told the detective that he had received a call from Mr. Butler earlier that day, and Mr. Butler said he had been robbed at his residence by two individuals who fled with marijuana. Detective Barlow testified that, according to defendant, Mr. Butler rolled the window down and said, "that's one of them" before shooting Tory.[4]

According to Detective Barlow, defendant told him that after Mr. Butler left his vehicle, he went to a gas station in Kenner. Defendant said that he left his car

---

[4] In his testimony, Mr. Butler denied that the victim stole marijuana from him earlier that day.

running while he went inside the gas station to call his father, and his car was missing upon his return. Defendant told the detective that he did not report the missing vehicle and instead gathered money to purchase a ticket to Houston. After he was informed about the surveillance footage from the apartment complex on August 5, 2016, defendant admitted he had left his vehicle in Metairie before leaving for Houston. Detective Barlow testified that defendant denied giving his keys to anyone or knowing that any individuals returned to his vehicle afterwards.

When asked why Mr. Butler's clothing was not tested for gunshot residue, Detective Barlow stated, "[p]artially because, inside that car, it's a tight fit, so both of them were in close contact." He explained that Mr. Butler and defendant both would likely have had gunshot residue on them, regardless of who fired the shot.

Jarell Vanzant testified that he saw defendant on August 5, 2016, and gave him a ride to the bus station. He explained that defendant went out of town to visit his girlfriend. Mr. Vanzant denied that defendant told him anything that he had done that day. On the following Sunday, defendant asked him to remove items from his vehicle—including the radio, license plate, registration, and paperwork— and bring the items to his father. Mr. Vanzant testified that he learned about the homicide after watching the news, and he told defendant to turn himself in when they spoke on the phone. Mr. Vanzant testified that during his statement to the sheriff's office, he told officers that defendant said, "he had to do what he had to do." He clarified that defendant did not admit to shooting anyone and denied any wrongdoing. Mr. Vanzant admitted during his testimony that he had prior criminal convictions.

Detective Barlow testified that he took a recorded statement from Mr. Vanzant, who identified himself as defendant's cousin, on September 22, 2016. He noted that Mr. Vanzant mentioned defendant's ongoing issue with the victim's brother and that defendant felt bullied in their narcotic exchanges. According to

Detective Barlow, Mr. Vanzant provided that defendant "did what he felt he had to do when he saw the younger brother that day." Detective Barlow further testified that Mr. Vanzant informed him that defendant admitted to shooting the victim.

## LAW AND DISCUSSION

On appeal, in defendant's first assignment of error, he argues that the evidence was insufficient to support his conviction for second degree murder. Defendant contends that the State failed to prove beyond a reasonable doubt that he was the perpetrator of the crime. He notes that both he and Bruce Butler admit they were present when the shooting occurred, and the only witness who identified him as the shooter was Bruce Butler. Defendant argues that Mr. Butler's identification of defendant was not believable as he testified in his own interests, and he repeatedly lied throughout the investigation. Defendant also complains that the testimony of Mr. Vanzant was used by the State to infer that defendant had a guilty conscience following the shooting, but Mr. Vanzant did not testify that defendant admitted to being involved in the shooting. Finally, defendant argues that a gunshot residue test of Mr. Butler's clothing should have been conducted, because it would have revealed whether Mr. Butler was only a passenger in the vehicle or the actual shooter.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

In cases involving circumstantial evidence, the trial court must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in

order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d 78, 83; *State v. Washington*, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

In the instant case, defendant was convicted of second degree murder, which is defined as the killing of a human being when the offender: (1) has specific intent to kill or to inflict great bodily harm; or (2) is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, even though he has no intent to kill or to inflict great bodily harm. La. R.S. 14:30.1; *State v. Harris*, 15-485 (La. App. 5 Cir. 4/13/16), 190 So.3d 466, 474, *writ denied*, 16-902 (La. 5/12/17), 220 So.3d 746. At trial, the State proceeded under the first theory—specific intent. Defendant does not allege on appeal that the State failed to prove the essential statutory elements of the crime for which he was convicted. Rather, defendant challenges his conviction on the basis that the evidence was insufficient to prove his identity as the perpetrator of the offense.

Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. *State v. Ray*, 12-684 (La. App. 5 Cir. 4/10/13), 115 So.3d 17, 20, *writ denied*, 13-1115 (La. 10/25/13), 124 So.3d 1096. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. *Id.* In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a requisite factual finding. *State v. Caffrey*, 08-717 (La. App. 5 Cir.

5/12/09), 15 So.3d 198, 203, *writ denied*, 09-1305 (La. 2/5/10), 27 So.3d 297. A reviewing court may impinge on the fact-finder's discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Harris*, 02-1589 (La. 5/20/03), 846 So.2d 709, 713 (citing *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988)).

In the present case, the record reveals that the State proved beyond a reasonable doubt that defendant was the perpetrator of the murder. The jury heard the testimony of Mr. Butler, who stated that defendant drove him to LaPlace Discount to complete a narcotics exchange. He testified that Tory came up to the passenger side of the vehicle after defendant called him over, and defendant reached across him and shot the victim through the open, passenger window. Surveillance video footage from LaPlace Discount, which was published to the jury, confirmed Mr. Butler's presence and that defendant's vehicle stopped next to Tory, who was on the passenger side, before he ran toward the gas station after being shot.

Detective Barlow testified that surveillance video footage revealed that defendant parked a red Toyota Corolla in an apartment complex around 6 p.m. on August 5, 2016, and appeared to wipe down the car before leaving. The vehicle was registered to defendant's mother, Lisa Seymore. Additionally, the surveillance footage from near the apartment complex on August 7, 2016, showed two individuals, identified as Travis Stewart and Jarrell Vanzant, return to the vehicle and remove several items, including the license plate. Mr. Vanzant testified that he saw defendant on August 5, 2016, and gave him a ride to the bus station so he could visit his girlfriend. Mr. Vanzant further provided that defendant asked him to remove certain items, including his license plate and his registration, from his vehicle because he did not want anyone to steal his belongings. Mr. Vanzant stated that defendant said, "he had to do what he had to do."

Defendant argues that although the State used Mr. Vanzant's testimony to infer a guilty conscience following the shooting, it only established that he left for Houston to visit his girlfriend and that he asked him to remove items from his car to prevent them from being stolen. However, while Mr. Vanzant testified that defendant did not tell him he shot the victim, Detective Barlow testified that Mr. Vanzant indicated in his statement that defendant admitted he shot Tory. Detective Barlow also testified that in his statement, Mr. Vanzant stated that defendant felt bullied by the victim's brother and that "he did what he felt he had to do when he saw his younger brother that day." Detective Barlow also testified that defendant previously reported an incident in which his vehicle was burglarized by the victim's brother, Cory, whom he knew as "Lil Co."

The State presented additional evidence from which a rational trier of fact could have inferred that defendant had a guilty conscience. After the incident, defendant failed to report the shooting and fled from the scene. Detective Barlow testified that defendant initially said his vehicle was stolen after the homicide, but when he was confronted with surveillance footage, defendant admitted he left his vehicle in Metairie before leaving for Houston. A defendant's flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. *State v. Cazenave*, 00-183 (La. App. 5 Cir 10/31/00), 772 So.2d 854, 860, *writ denied*, 00-3297 (La. 10/26/01), 799 So.2d 1151; *See also State v. Patterson*, 10-415 (La. App. 5 Cir. 1/11/11), 63 So.3d 140, 150.

Defendant asserts that his conviction was based on Mr. Butler's "self-serving" testimony, relying heavily on the fact that Mr. Butler provided false or inconsistent statements during the course of the investigation. Although the record reflects that Mr. Butler made several inconsistent and contradicting statements to the police after the shooting, these inconsistent statements were heard and considered by the jury and ultimately went to the witness' credibility. The

credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. *State v. Jones*, 08-20 (La. App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, this is a matter of the weight of the evidence, not its sufficiency. *State v. Miller*, 11-498 (La. App. 5 Cir. 12/13/11), 84 So.3d 611, 617, *writ denied*, 12-176 (La. 9/14/12), 97 So.3d 1012. The credibility of witnesses will not be reweighed on appeal. *Id.*

Defendant also complains that the State did not have Mr. Butler's clothing tested for gunshot residue and claims the test would have definitively proven who shot Tory. However, Detective Barlow explained that defendant and Mr. Butler were both inside of the vehicle during the shooting. Therefore, he would have expected Mr. Butler to have residue on him because he was within the area where the gun was fired.

In light of the foregoing, we find the evidence was sufficient to convince a rational trier of fact beyond a reasonable doubt that defendant shot and killed Tory Horton on August 5, 2016. Accordingly, the evidence was sufficient under the *Jackson* standard to support defendant's second degree murder conviction. This assignment of error is without merit.

In his second assignment or error, defendant argues that the trial court erred in accepting a non-unanimous jury verdict in light of the U.S. Supreme Court's recent ruling in *Ramos v. Louisiana*, 590 U.S. --, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020). He argues that the trial judge referred to the verdict as being responsive, which indicated that the verdict was not unanimous, and he later learned that the guilty verdict was by a vote of ten to two. Defendant contends that because the jury's verdict was not unanimous, his conviction and sentence for second degree murder should be vacated pursuant to *Ramos*.

On June 27, 2019, the jury found defendant guilty of second degree murder, in violation of La. R.S. 14:30.1. Since the punishment for this offense is necessarily confinement at hard labor, a jury of twelve persons was required. *See* La. Const. Art. I, § 17; La. C.Cr.P. art. 782; La. R.S. 14:30.1. The record reflects that the jury was polled, and the results were discussed in a sidebar conference that was not transcribed. Thereafter, the trial court stated, "[t]he verdict is responsive. The Court adopts the verdict of the jury as the verdict of the Court." On appeal, defendant states that a conference call occurred with the trial judge and prosecutor confirming a ten to two verdict.

On June 9, 2020, defendant filed a Motion to Supplement the Record, requesting that the jurors' polling slips be included in the record on appeal. This Court granted the motion that same date. On June 22, 2020, the record was supplemented; however, the record reflects only eleven polling slips were provided. Of these eleven polling slips, nine reflect a verdict of guilty and two reflect a verdict of not guilty. Because one slip is missing, the final vote is unknown. Regardless, the polling slips confirm the verdict was not unanimous.[5]

Non-unanimous verdicts were previously allowed under La. Const. Art. I, § 17 and La. C.Cr.P. art. 782 and the circumstances of the instant case. However, in *Ramos*, *supra*, the United States Supreme Court found that the Sixth Amendment right to a jury trial—as incorporated against the states by the Fourteenth Amendment—requires a unanimous verdict to convict a defendant of a serious offense. The Court concluded: "There can be no question either that the Sixth Amendment's unanimity requirement applies to state and federal trials equally …

---

[5] Defendant's offense was committed prior to January 1, 2019, and therefore, the pre-amendment version of the statutes applied at that time, requiring that ten jurors must concur to render a verdict. *See* La. Const. Art. I, § 17 and La. C.Cr.P. art. 782(A). Because the final vote is unknown, the missing slip could show that defendant was convicted by a vote of ten out of twelve or an improper vote of nine out of twelve. Defendant would be entitled to a new trial if the polling slips revealed an insufficient number of votes to find a verdict in the instant case. *See State v. Cook*, 396 So.2d 1258, 1261 (La. 1981). While defendant asserts that the verdict was ten to two, this is unclear from a review of the record. Nevertheless, it is clear that pursuant to *Ramos*, defendant is entitled to a new trial.

So if the Sixth Amendment's right to a jury trial requires a unanimous verdict to support a conviction in federal court, it requires no less in state court." Based on *Ramos*, Louisiana defendants who were convicted of serious offenses by non-unanimous juries and whose cases are still pending on direct review are entitled to new trials.[6]

In light of *Ramos*, this Court and other appellate courts have vacated defendants' convictions and sentences and remanded cases still pending on direct review where the jury verdict was not unanimous for a serious offense. *See State v. Harrell*, 19-371 (La. App. 5 Cir. 7/8/20), 299 So.3d 1274; *State v. Rivas*, 19-378 (La. App. 5 Cir. 5/21/20), 296 So.3d 1198; *State v. Frinks*, 18-899 (La. App. 3 Cir. 7/29/20), ---So.3d ---, 2020 WL 4343314; *State v. Broussard*, 19-792 (La. App. 3 Cir. 6/12/20), 299 So.3d 176; *State v. Calloway*, 18-1724 (La. App. 1 Cir. 5/29/20), ---So.3d---, 2020 WL 2832629; *State v. Peck*, 53,478 (La. App. 2 Cir. 5/20/20), 296 So.3d 1168, *writ denied*, 20-787 (La. 10/14/20), ---So.3d---, 2020 WL 6055053; *State v. Myles*, 19-0965 (La. App. 4 Cir. 04/29/20), 299 So.3d 643.

In the present case, because the verdict was not unanimous and the case is still on direct review, we find that defendant is entitled to a new trial pursuant to the holding in *Ramos*, *supra*. Accordingly, we vacate defendant's conviction and sentence for second degree murder, and we remand for further proceedings.

## ERRORS PATENT

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). We find no further errors requiring corrective action.

---

[6] For purposes of the Sixth Amendment, federal law defines petty offenses as offenses subject to imprisonment of six months or less and serious offenses as offenses subject to imprisonment over six months. The Sixth Amendment's right to a jury trial only attaches to serious offenses. *State v. Harrell*, 19-371 (La. App. 5 Cir. 7/8/20), 299 So.3d 1274, 1283 (citing *Lewis v. United States*, 518 U.S. 322, 327-28, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996); *Hill v. Louisiana*, 2013 WL 486691 (E.D. La. 2013)).

**DECREE**

For the foregoing reasons, we vacate defendant's conviction and sentence for second degree murder, and we remand to the trial court for further proceedings.

**CONVICTION AND SENTENCE VACATED; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 4, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-KA-129

### E-NOTIFIED
40TH DISTRICT COURT (CLERK)
HONORABLE MADELINE JASMINE (DISTRICT JUDGE)
HONORABLE BRIDGET A. DINVAUT          WILLIAM R. DIETERS (APPELLEE)          PRENTICE L. WHITE (APPELLANT)
(APPELLEE)
GRANT L. WILLIS (APPELLEE)

### MAILED
HONORABLE JEFFREY M. LANDRY
(APPELLEE)
ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH 3RD STREET
6TH FLOOR, LIVINGSTON BUILDING
BATON ROUGE, LA 70802